ROBERT A. LING *vs.* GEORGE I. MALCOM ET AL.

*Third Judicial District, Bridgeport, October Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Although a contract for the purchase, upon margin, of stocks of a fluctuating value, is a speculative one, it is not for that reason illegal, provided there is a *bona fide* employment of the broker to actually buy the stocks to be held for delivery upon payment of the price.

In an action against New York stock brokers to recover damages for wrongfully selling the plaintiff's stock which they were carrying for him upon margin, the defendants claimed that the only issue raised by the pleadings was whether they had in fact accepted certain fire insurance stock worth $8,500 as a compliance with their call for $10,000 additional margin.  *Held :*—

* Transferred from first judicial district.

1. That although the complaint might perhaps be susceptible of the construction placed upon it by the defendants, its averments were nevertheless broad enough to enable the plaintiff to recover if he proved either an actual acceptance of such stock by the defendants or an agreement to accept it, or, failing such proof, if he proved that sufficient notice that additional margin was required was not given him before the sale was made.

2. That in the absence of a special agreement respecting the kind of collateral receivable as margin, and the notice required of a call for additional security, both parties would be presumed to have contemplated that these matters should be settled in accordance with the reasonable rules and usages of the New York stock exchange.

3. That if there was no proof as to the notice required by the usages of the stock exchange, nor of any special agreement respecting the notice, then reasonable notice was required before the sale.

In such an action the rule of damages for the broker's wrongful sale of stock which fluctuates in value, is not the price of the stock at the date of its conversion, with interest, but the difference between the price realized by the broker and the highest price above that which the stock attains within a reasonable time thereafter, or before an actual repurchase by the customer if he makes one within such reasonable time.

In such cases the customer, after receiving notice of the broker's wrongful sale, is bound to so act as to make his damages as small as he reasonably can ; but in determining when he first had a reasonable opportunity to repurchase the stock, his financial inability to do so is not to be considered.

An advance in the price of a customer's stock, immediately after its wrongful sale by his broker, is not a necessary consequence of such sale, and therefore must be alleged in the complaint in order to justify a recovery of the special damages due to such advance.

Argued November 9th, 1904—decided January 4th, 1905.

ACTION against stock brokers to recover damages for an alleged wrongful sale of stocks bought upon margin and held by them as collateral security, brought to the Superior Court in Hartford County and tried to the jury before *Case, J.*; verdict and judgment for the plaintiff for $3,500, and appeal by the defendants. *Error and new trial granted.*

The complaint in this action is as follows : " 1. The plaintiff, on or about January 1st, 1903, contracted with the defendants, for a commission to be paid to them, to purchase

for him shares of stock in certain corporations as he might direct, and to obtain for and loan to him such sums of money in addition to the amount deposited by the plaintiff with them as should be necessary to pay for said stock as purchased; the plaintiff then agreeing to furnish such additional security as they might require as collateral for such loan. 2. The defendants thereafter purchased for the plaintiff shares of stock . . . as follows : (describing the stocks). 3. In compliance with said agreement, the defendants advanced and loaned to the plaintiff, and on his account, sums of money from time to time amounting, in the whole, to the sum of dollars. 4. The plaintiff then pledged and delivered to the defendants, as collateral security for such loan, in addition to the stock so purchased, the following : (describing them). 5. The defendants accepted said bond and stocks as collateral security, as aforesaid, and it was then and there understood and agreed between the defendants and plaintiff that if, at any time, the defendants desired further security for or payment of said loan, reasonable notice should be given the plaintiff and he should have a fair opportunity to furnish additional security or pay said loan, before such pledged securities were sold or in any manner converted by the defendants. 6. On the morning of June 10th, 1903, the defendants advised the plaintiff, by letter, received in due course of mail, that they required additional security for said loan to be deposited with them on or before the commencement of business on that day. 7. The plaintiff, on the same day, and before the commencement of business, delivered and pledged to the defendants, as such collateral security, twenty-seven shares of the stock of The National Fire Insurance Company, of the value of nine thousand dollars, which the defendants then and there accepted through their agent, Niles P. Hough, and then and there agreed to continue said loan to the plaintiff and not to sell or dispose of said pledges, securities, or any part of them, without reasonable notice to the plaintiff and giving him a full and fair opportunity to pay said loan or make other provision in regard to the same. 8. Notwithstanding said agreement

and the pledge of said additional collateral security, the defendants, on the same day, without notice to the plaintiff, sold said collateral securities so pledged by the plaintiff and converted the amount received therefor to their own use, and then returned to the plaintiff said twenty-seven shares of stock of The National Fire Insurance Company."

The defendants by their answer admitted that they purchased said stocks and advanced money from time to time for the plaintiff; that plaintiff pledged therefor the stocks and the bond described in paragraph 4, and that they were accepted by the defendants; and in effect denied the remaining allegations of the complaint.

Upon the trial to the jury the plaintiff offered evidence to prove these facts: The defendants were stockbrokers and members of the New York stock exchange, with a branch office, under the charge of Niles P. Hough, at Hartford, connected by private telegraph and telephone wires with the New York office. About January 1st, 1903, the plaintiff, who resided in Hartford, entered into a contract with the defendants by which, upon plaintiff's orders, they were to buy and sell stocks for him upon the New York stock exchange, they advancing ninety per cent. of the purchase price, and the plaintiff the remaining ten per cent., in cash or good collateral securities. The defendants were to hold the stocks so purchased in pledge, as security for their advancements; were to call for no other deposit of cash or collateral thereon, nor hold him in default, unless and until his deposit in their hands should depreciate to within three or four per cent. of the market value of the stocks involved, in which case the plaintiff was to have ample notice and opportunity to make, either in cash or good collateral, the further deposit demanded of him, and only upon his failure to respond thereto and make the necessary deposit were the defendants to secure themselves by a sale of the pledged securities. The defendants were to receive one eighth of one per cent. commission on the par value of stocks bought and sold, and interest at the rate of six per cent. per annum on money advanced. Having theretofore made and kept

good the deposit required by said arrangement upon pur-
chases made by defendants, and having on June 4th, 1903,
been called upon by the defendants for a deposit of $3,000 to
protect his margin, the plaintiff informed Hough that his ac-
count seemed all right as the market then stood, and that if
any fluctuation in values called for such action he would
make his account good. Hough replied that that was all right.
In the afternoon of June 9th Hough notified the plaintiff
that unless he deposited with him additional margin to the
amount of $10,000 before the opening of the stock exchange
at 10 o'clock the next morning, the defendants would pro-
tect their account by selling out his pledged securities upon
the opening of the market on said June 10th, and that
formal notice would come by mail, which written notice the
plaintiff received shortly before the opening of the stock
exchange the next morning. When Hough gave such notice
on the 9th, the plaintiff proposed to put up as collateral,
and in satisfaction of the defendants' demands, twenty-
seven shares of the stock of the National Fire Insurance
Company of Hartford, and asked Hough if that would be
acceptable security, and was told it would be all right.
On presenting said stock the next morning the plaintiff
called Hough's attention to the fact that it fell short of
$10,000, being of the value of about $8,500. Hough said it
was near enough, and received and accepted it in full satis-
faction of the demand for margin. At plaintiff's request
Hough immediately telegraphed the defendants that said
stock had been turned over to him, and shortly before 10
o'clock received an answer that the stock was not accept-
able and demanding $10,000 in cash before the opening of
the stock exchange, in default of which they would sell his
stock for their protection, which message was immediately
given to the plaintiff who was still in Hough's office. The
plaintiff declined to make any other deposit and protested
against the threatened sale of the stocks. The defendants,
at the opening of the stock exchange on that day, sold the
stocks held by them, excepting the collateral securities re-
ferred to in paragraph 4 of the complaint. They returned to

the plaintiff three shares of the stock of the Wells Fargo Company, a $1,000 Hartford, Manchester and Rockville Tramway Company bond, and $155.54 in cash. Before 11 o'clock the sale was reported to the plaintiff at Hough's office, and said National Fire Insurance stock was offered back to him, which he refused to take. On the 13th of June the market value of the stocks so sold was about $7,000 more than at the time of said sale. During the remainder of the month of June the plaintiff was pecuniarily unable to repurchase said stocks at any price at which they were purchasable in the market.

The defendants claimed to have proved that by their agreement with the plaintiff he was required to keep his ten per cent. margin good upon notice, and that the notice he was to receive, and the conduct of the parties in all other respects in said transactions, was to be governed by the rules of the New York stock exchange ; that from the 4th to the 10th of June the plaintiff's margin was short of the amount required by said agreement, and the market during said period was steadily declining, and the plaintiff was repeatedly called upon to put up additional margin as required by his agreement, or to reduce his holdings, and was warned that otherwise the defendants would be compelled to protect themselves by a sale of the stocks, and that the plaintiff promised to comply with said demands but failed to do so; that on the afternoon of June 9th Hough, under instructions from the defendants, notified the plaintiff that unless he put up additional margin of $10,000 before the opening of the market on the following day, defendants would sell his stocks at the opening of the market, and that the plaintiff then informed Hough that he was unable to put up any additional margin; that before the opening of the market on June 10th the plaintiff offered to Hough the said National Fire Insurance Company stock, which offer was immediately telegraphed to the defendants who immediately declined said offer, and said stock was never accepted; that thereupon on said 10th of June between 10 and 11 o'clock said stocks, carried and held by the defendants, were sold

in the regular course of business on the New York stock exchange for their full market value, and the three shares of stock, the bond of $1,000, and $155.54 in money, as above stated, were thereafter returned to the plaintiff; that the defendants notified the plaintiff of said sale on the morning it was made, and of the prices at which said securities were sold, and at the same time notified the plaintiff that the market price of said stocks was then lower than at the time of such sale, and offered to buy them back for the plaintiff, provided he would furnish the defendants with $10,000 cash margin or acceptable stock exchange collateral, which offer the plaintiff refused, although at that time and thereafter during the remainder of said day said stocks could have been bought upon the New York stock exchange for less than the amount for which they had been sold by the defendants; and the plaintiff did not then or thereafter repurchase said stocks.

The plaintiff had a verdict for $3,500.

*Lucius F. Robinson*, for the appellants (defendants).

*George J. Stoner*, for the appellee (plaintiff).

HALL, J.   The appeal complains of the charge and rulings of the trial court upon the question of the defendants' right to sell the stocks and securities on the 10th of June, and upon the question of damages.

Upon the first question the defendants asked the court to charge the jury in substance that upon the pleadings and evidence they had the right to call for the $10,000 additional margin, and, upon plaintiff's failure to furnish it, to sell the stocks and securities to protect themselves; and that there was no complaint in the pleadings that the notice of the requirement of further margin was not reasonable; that the defendants had the right to refuse to accept the fire insurance stock, and that unless the jury should find that they actually accepted it for the additional margin demanded, the verdict should be for the defendants, irrespective of any question

whether reasonable notice of the sale had been given. The court charged the jury that if the offer of the fire insurance stock was accepted by Hough as a compliance with the call for margin, the plaintiff was entitled to a verdict, and of this instruction no complaint appears to be made.

Although the complaint is perhaps susceptible of the construction placed upon it by the defendants, we find no error in the refusal of the trial court to charge the jury that the plaintiff could recover only upon proof that the offer of the fire insurance stock was actually accepted. Evidence was received, and apparently without objection, to the effect that on June 9th Hough agreed to accept this stock as a compliance with the call for $10,000 additional margin, and that before that date there had been an agreement that further margin would not be required until that already furnished had fallen to within three or four points of the market price of the stocks purchased, and also evidence of notices given before June 10th, to furnish additional security, and of the conversation between the plaintiff and Hough as to the necessity of furnishing further margin upon such calls. Such proof was not materially variant from the allegations of paragraphs 5 and 7, which were apparently intended as averments that the original contract had been modified as to the amount of margin required, and as to when additional margin must be furnished. Under the complaint as we view it, the plaintiff in order to recover was required to prove either an actual acceptance of the fire insurance stock or an agreement to accept it, or, upon failure to prove either of these facts, that sufficient notice that additional margin was required was not given before the sale was made.

That on the 9th and 10th of June at least $10,000 was required to make the plaintiff's ten per cent. margin good, seems to have been undisputed. An agreement that the fire insurance stock would be accepted as a compliance with the demand to meet such deficiency, involved an agreement that collateral of that kind and of that value (about $8,500) would be so accepted by the defendants. In the absence of an agreement to the contrary, both parties are pre-

sumed to have contemplated that these transactions would be conducted in accordance with the reasonable rules and usages of the New York stock exchange, which appear to have been proved at the trial; *Skiff* v. *Stoddard*, 63 Conn. 198, 219 ; and if, under such rules and customs, this collateral was receivable to meet a call for additional margin, the defendants were required to accept it, to the amount of its market value. If it was not receivable under such rules and usages, the defendants were not required to accept it, however great its value may have been, unless they had specially agreed to do so.

As to the claimed insufficient notice, it appears from the evidence offered by the plaintiff that he was notified that his margin was deficient several days before the 9th of June, and that on that day he was expressly notified that unless he furnished additional margin to the amount of $10,000 before the opening of the stock exchange at 10 o'clock the next morning his stocks would be sold. If there was no special agreement made respecting the notice to be given of the requirement of additional margin before the stocks could be sold by the defendants to protect themselves from loss, the parties are supposed to have intended that such notice should be given in accordance with the rules and customs of the New York stock exchange ; and, in the absence of such special agreement, the time and character of the notice required to be given was that shown to have been fixed by such rules and usages, rather than that which the jury may have decided to have been reasonable. If there was no proof as to the notice required by the usages of the stock exchange, nor of any special agreement regarding notice, then reasonable notice was required to be given before the sale.

The court rightly refused to instruct the jury that the rule of damages, in actions of this character, is the value of the stock at the time of the sale, with interest. Although contracts like those in question, for the purchase of stocks of a fluctuating value upon a margin, are speculative in character, they are not for that reason illegal, when there is

a *bona fide* employment of the broker to make an actual purchase of the stocks to be held for delivery upon payment of the purchase price. *Hatch* v. *Douglas*, 48 Conn. 116. Since the plaintiff's contract with the defendants, for the purpose of speculation, is recognized by the law as valid, he may recover, as damages for the breach of it, compensation for the loss of profits caused by the unauthorized act of the defendants, which could not have been averted by the exercise of reasonable prudence and diligence on his part. But the plaintiff was required after notice of the sale to "so act as to make his damages as small as he reasonably can. . . . The law gives him all the redress he should have, by indemnifying him for the damage which he necessarily sustains." *Wright* v. *Bank of the Metropolis*, 110 N. Y. 237, 245. The correct measure of the plaintiff's damage was, therefore, the excess, if any, over the price realized (at the sale on June 10th), of the lowest sum for which he could have repurchased the stocks, after notice of the sale, had he given an order to that effect with reasonable promptness; or, in case of fluctuations of market price between the wrongful sale and the latest day to which it would have been reasonable to defer a repurchase, the difference, if any, between the price obtained when the shares were converted and the highest market price, in excess thereof, attained during that period. *Wiggin* v. *Federal Stock and Grain Co.*, 77 Conn. 507; *Galligher* v. *Jones*, 129 U. S. 193. To enable a customer to recover damages from his broker for such an unauthorized sale of stocks, it is not necessary that the former should have actually repurchased them, or have ordered them repurchased. The question is, when, in the exercise of reasonable diligence and judgment, ought he to have ordered a repurchase if he desired to obtain the benefit of a possible future advance in price. But in determining when the customer had the first reasonable opportunity to replace the stocks sold, his financial inability to do so is not an element to be considered, although, when he has sufficient means, he is entitled to a reasonable time to convert his securities into cash in order to raise the sum required to replace the stocks. *Burhorn* v. *Lock-*

*wood*, 71 N. Y. App. Div. 301. The trial court therefore erred in instructing the jury that the plaintiff's financial condition was to be considered in determining when the first reasonable opportunity was afforded him to replace the stocks which had been sold.

Proof that after the sale on the 10th of June the price of the stocks advanced, was not admissible under the allegations of the complaint. The goods having been sold upon the market, a subsequent advance in price and a consequent loss of profits were not results which necessarily followed from the unauthorized sale. It is said that such loss of profits is the natural and proximate result of the wrongful act complained of. That is true of all damages, whether general or special, which may be recovered in an action of this character; the difference between them being that the former are such damages as follow as a matter of course from the wrongful act complained of, while the latter include those injuries and losses which are not necessary results of such a wrongful act "but in fact follow it as a natural and proximate consequence." *Bristol Mfg. Co.* v. *Gridley*, 28 Conn. 201, 212. Proof of the fact that the price of the stock advanced after the sale and before the plaintiff had a reasonable opportunity to replace it, was necessary to enable the plaintiff to recover damages in excess of the market price at the time of the wrongful sale. As such advance did not necessarily follow from the sale, the damages which resulted therefrom to the plaintiff were special and should have been specially alleged in the complaint. *Crug* v. *Gorham*, 74 Conn. 541, 544; *Taylor* v. *Monroe*, 43 id. 36.

As a new trial must be granted, we do not consider the question of whether the trial court erred in denying the defendants' motion for a new trial upon the ground that the verdict was against the evidence.

There is error and a new trial is granted.

In this opinion TORRANCE, C. J., BALDWIN and PRENTICE, Js., concurred.

HAMERSLEY, J. I concur in the result, and in the opinion except that portion of it which sanctions the adoption of the so-called New York rule of damages; as to this part of the opinion I dissent.