THE WOODBRIDGE ICE COMPANY *vs.* THE SEMON ICE
CREAM CORPORATION.

Third Judicial District, Bridgeport, October Term, 1908.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

To abrogate a contract, as well as to make one, requires a meeting of at
least two minds.

Accordingly, if one has agreed to furnish another with ice for a year at a
stated sum, he cannot cancel his obligation after a few months by
merely notifying the customer that the price of ice thereafter supplied him will be increased; but if the customer accepts and pays
for the ice at the increased rates, these facts would be evidence of
an abrogation or waiver of the original agreement for the jury to
consider in passing upon that question.

An alleged contract between the parties which is relied upon in defense
may be pleaded in general terms, provided enough is stated to apprise the plaintiff of the nature of the agreement which it is intended to prove.

The defendant pleaded that he and the plaintiff had orally agreed that
the latter should furnish him with ice for the year at $2 a ton, but
did not allege that he, the defendant, had promised to buy such ice.
*Held* that if the answer was defective in that particular, advantage
should have been taken of the defect by demurrer or by objecting
to the admission of any evidence of the contract; and that the trial
court correctly refused to instruct the jury to disregard all evidence
of such contract.

The plaintiff requested the court to charge the jury that if they should
find that the plaintiff had agreed to sell the defendant ice for one

Woodbridge Ice Co. *v.* Semon Ice Cream Corporation.

year at $2 a ton and there was no agreement on the latter's part to purchase for the year, the result was not a contract but a mere offer which the plaintiff could revoke at any time. *Held* that this request was proper, and that it or something equivalent thereto should have been given to the jury; and that a charge that it was "not necessary—not absolutely essential—that the defendant should agree to take the ice for the whole year" was erroneous. *Held* also, that as the request assumed that if such offer had been accepted there would have been a valid contract, it was unnecessary for this court to pass upon that question.

*It seems* that a contract to sell what one shall need in his business during a stated time is valid.

The terms of an offer as made must be explicitly, fully and unconditionally accepted, in order to constitute a binding contract, or to effect a change in the legal relations between the parties.

Under its counterclaim the defendant sought to recover the difference in value between the ice contracted for and that which was delivered. *Held* that an instruction which authorized the jury to allow the defendant not only to recoup for the defective quality of the ice, in mitigation of the plaintiff's damages, but also to recover for any overpayment proved, was erroneous, in that it permitted a verdict for damages not claimed in the pleadings; and that the instruction was harmful to the plaintiff was apparent from the fact that the amount of damages awarded to the defendant just equaled the amount of the claimed overpayment with interest.

The defendant offered the declarations of its own agent, while calling the attention of the witness to the poor quality of the ice, to the effect that the plaintiff was robbing the defendant and that the ice bill would not be paid. *Held* that these were mere self-serving declarations made in plaintiff's absence, which should not have been received in evidence.

The defendant's agent was also permitted to testify that he had called the attention of everybody he met in his city to the condition of the ice, and that he didn't do anything else apparently. *Held* that the quality of the ice could not be proved by such declarations, which should have been excluded.

Other declarations of the same witness made after he had received notice of an increase in the price of the ice, to the effect that he was a poor man in the grip of a combination which was ruining him, should also have been rejected as irrelevant to the issue and as tending to prejudice the plaintiff's case.

Submitted on briefs October 28th, 1908—decided January 6th, 1909.

ACTION to recover for ice sold and delivered, with a counterclaim by the defendant for damages on account of

its poor quality, brought to the Superior Court in New Haven County and tried to the jury before *Reed, J.;* verdict and judgment for the defendant for $681, and appeal by the plaintiff. *Error and new trial ordered.*

*E. P. Arvine, Albert D. Penney, David E. Fitzgerald* and *Walter J. Walsh,* for the appellant (plaintiff).

*Richard H. Tyner,* for the appellee (defendant).

THAYER, J. This is an action upon the common counts, with a bill of particulars showing 464 tons and 1,900 pounds of ice sold and delivered by the plaintiff to the defendant during the months of August, September and October, 1906, the deliveries during August being charged at $5 per ton and those for September and October at $6 per ton, the total charge being $2,526.70.

The answer, after alleging that the plaintiff is an ice dealer and the defendant a wholesale and retail dealer in ice-cream in New Haven, and that the action is brought to recover a balance of $2,526.70 claimed to be due, contains the following allegations:—

"4. On or about February 1, 1906, the defendant, who for some time prior thereto has been a customer of the plaintiff, and the plaintiff entered into an oral agreement whereby the plaintiff was to furnish ice to the defendant to be used by it in said ice-cream business during the year 1906. 5. The plaintiff did furnish ice to the defendant under said agreement from February 1, 1906, to October 26, 1906, and the total amount of ice furnished during said period was 1,351.88 tons. 6. It was agreed between the defendant and the plaintiff that all ice furnished should be delivered at the defendant's factory at $2 per ton net, and that all of said ice should be clean and solid, made up of large blocks, and first class in every particular and in every way satisfactory to the defendant. 7. The ice mentioned

in the bill of particulars was part of the ice furnished the defendant under said agreement."

The answer then alleges that the ice furnished was full of dirt and refuse, and was not satisfactory to the defendant; that it could not be handled and used by him except at a much larger expense than if it had been ordinary marketable ice; that it was not worth more than $1 per ton, and that if it had been clean, solid and satisfactory ice it would have been worth $2,700. It then alleges that the defendant paid the plaintiff after February 1st, 1906, on account of said ice, various sums amounting in all to $3,326.85, that this was "all and more than all said ice was reasonably worth," and that there was no other agreement, express or implied, under which the ice mentioned in the bill of particulars was furnished, except the one set up in the answer.

The answer contains the following by way of counterclaim, paragraphs 11 to 19 inclusive having been stricken from the answer before the counterclaim was filed: "1. All the foregoing paragraphs of this answer, except paragraphs 11 to 19 inclusive, are hereby made part of this counterclaim. 2. Said ice was worth at least $4,503.55 less than the plaintiff claims on account of its deficient character. The defendant claims to recoup said sum of $4,503.55 for such deficiency, to the extent of the balance claimed by the plaintiff, and asks judgment against the plaintiff for the excess."

The reply admits that $2,526.70 is claimed to be due, that the occupations of the parties are as stated, and denies all the other allegations of the answer and counterclaim.

Upon the trial it was proven and not denied by either party, that from January to March, 1906, the plaintiff had been selling ice to the defendant at $2 per ton; that on March 30th the plaintiff notified the defendant by letter that until further notice the price of ice delivered to it would be at $4 per ton; that on August 7th, by another letter, it was notified that until further notice the price would

be $5, and that on August 31st, by another similar letter, notice was given it that after September 1st the price would be $6. It was also undisputed that monthly bills were rendered for ice sold each month at the different prices; that these had all been paid to August 1st, 1906, and that these payments amounted to the sum of $3,326.85 as stated in the defendant's answer. The defendant claimed that these payments were made under protest: the plaintiff, that they were made freely and voluntarily.

The chief contested question between the parties, apart from the quality of the ice, was whether there was a contract between the parties such as was set up in the answer. The defendant claimed to have established such a contract; the plaintiff claimed that the evidence failed to establish it, and that if such a contract was made it was abrogated later.

The court charged the jury that the sending of the letters giving notice of an increase of price, and the acceptance of ice thereafter by the defendant and payment of the price demanded, would not of themselves amount to a waiver or abrogation of the contract claimed by the defendant, if made; but that such facts would be evidence for the jury to consider in determining whether there was such a waiver or abrogation of the contract. The plaintiff claims that there was error in this part of the charge.

If there was a contract between the parties, made in February, as claimed by the defendant, the plaintiff alone could not abrogate it. It required the same meeting of minds to abrogate it which was required to create it. The plaintiff could not, by writing a letter to the defendant stating that ice thereafter delivered would be charged at a different price, annul the contract or change its terms. In accepting the ice after such notice and in paying the increased price, the defendant may have acted, as it claimed it did, under protest, insisting upon its rights under the contract, and that an adjustment in accordance with it should after-

ward be made. The two parties might rescind or change the terms of the contract, and, as the jury were told, the acceptance of the ice after the notices, and the payment of a double price for it, was evidence, and very strong evidence, of the abrogation or waiver of the contract, if it ever had existence. But these circumstances did not as matter of law amount to an abrogation or waiver of it, and it was therefore properly left for the jury to draw their inferences from the facts, and say whether such was their effect.

The same considerations support the action of the court in refusing to charge as requested by the plaintiff, that the sending of the letters and the receipt of the ice and payment for it at the advanced price thereafter by the defendant constituted an abrogation or waiver of the contract.

The plaintiff requested the court to charge that there was "no allegation in the pleadings that the defendant agreed to buy goods of the plaintiff for a year or for any specified time. Under the pleadings there was nothing to prevent the plaintiff from changing the price in April, or any subsequent time." This was, in effect, asking the court to take from the jury's consideration all of the evidence which had been offered to support the defendant's claim that there was a contract under which the ice was to be furnished for a year at $2 per ton, for the reason that the answer did not allege such a contract. If the answer is thus defective, advantage could have been better taken of such defect by demurring to the answer, or by objecting to all evidence of the contract. But the court charged, and correctly, that there was a sufficient allegation of a contract between the parties, and refused to charge as requested. A general allegation, sufficient to give the plaintiff notice of the nature of the contract which would be attempted to be proved, was all that was required. The fourth and sixth paragraphs state that an agreement was entered into between the parties, and the nature of the claimed agreement. It was not necessary to allege that the defendant

promised to take the ice in a certain quantity for a year and to pay for the same. These matters were to be proven under the allegation that there was such a contract. Under the allegations the defendant might prove a valid contract, mutually entered into by the parties, of the nature which it claimed to have proven.

The plaintiff claimed that the defendant's evidence failed to establish such a contract, because, although the jury should find that the plaintiff agreed to sell to the defendant what ice it should need in its business during the year at $2 per ton, yet the evidence failed to show any agreement on the part of the defendant to purchase its ice for that year of the plaintiff. Relative to this contention the plaintiff asked the court to charge the jury as follows: "Where one party agrees to sell goods to another at a stated price for a year or other stated time, and there is no agreement on the part of the other party to purchase for the year or the stated time, the result is not a contract but a mere offer on the part of the vendor, which may be revoked at any time." The court read this request to the jury and responded to it by saying: "Now, I say to you in response to that, that such might be a mere offer on the part of the vendor, or it might not. But in my judgment, where there is any agreement by one party to sell ice for the year, and the consideration by the other party is to pay two dollars a ton for that ice, that it would be a good contract. That is, it would not be necessary—it would not be absolutely essential—that the other party should agree to take ice for the whole year at that price. But if the offer is made on the part of the plaintiff to furnish the defendant ice for one year, or for the season, and in consideration the defendant agrees to pay therefor two dollars a ton for that ice, I think that is a sufficient consideration and a valid contract."

As the request to charge assumes, without admitting, that a contract whereby the plaintiff agreed to sell the de-

fendant, and the latter agreed to buy of the plaintiff, all
the ice which the defendant should want, or need in its ice-
cream business, for a stated time at a stated price, would
be valid and binding upon both parties, it is unnecessary
to consider the question, argued at some length in the plain-
tiff's brief, whether such a contract would be invalid be-
cause the defendant would not be bound thereby to take
any ice at all. However the case may be when the contract
is merely to sell what one may want or desire during a
given time, there are strong authorities that a contract to
sell what one shall need in his business during a stated
time is good. *Hickey* v. *O'Brien*, 123 Mich. 611, 82 N. W.
241.

The proposition presented by the request is, that if there
was no acceptance according to the terms of the offer there
was no contract. The defendant, as the court finds, claimed
to have proved the contract by the testimony of one Semon.
The substance of this was that in conversation with two
agents of the plaintiff they said to him that the plaintiff
was going to furnish the defendant ice for the year at the
old price, and Semon, who was an officer and agent of the
defendant, said: "Then it is distinctly understood that I
get all the ice I want at two dollars a ton," and Widemann,
one of the plaintiff's agents, said "Yes." The plaintiff
claimed that the language testified to by Semon did not in
law amount to a contract, but was a mere offer without ac-
ceptance, and was subject to revocation at any time. The
question presented by the request was important, there-
fore, and the plaintiff was entitled to have the jury ade-
quately instructed as to the law bearing upon it. The jury
had been instructed in an earlier part of the charge, already
alluded to, that if there was such a contract as claimed by
the defendant the plaintiff was bound by it, and could not
during the year of its continuance change the price charged
for ice. By the part of the charge now under consideration
they were told, in substance, that it was not necessary to

the validity of the contract that the other party to it should have bound itself for the same period. Where terms for changing the legal relations between two parties are offered by one party to another, those terms must be explicitly, fully and unconditionally accepted, to effect such change of relations and constitute a binding contract. The plaintiff was therefore entitled to have its request, or something equivalent thereto, given to the jury, and the charge as given cannot be sustained.

The defendant by its counterclaim asks only to be allowed the difference between the value of the ice delivered and the value of ice such as should have been delivered under the contract claimed. The court instructed the jury that it was proper for the defendant, "if you find that it has proved the allegations set up in its answer and counterclaim, to show defects in said ice, and if you find also that there was no abrogation of the contract on its part made afterward, it is competent for it to show defects in said ice in mitigation of the demand, and, as has been claimed in this case, where more money has been paid than the ice is worth, in an action brought to recover a claimed balance, the defendant may set up a counterclaim and recover for the overpayment."

Under this charge the jury must have understood that upon the counterclaim the defendant could not only recoup for the defective quality of the ice, in mitigation of plaintiff's damages, but could also recover a judgment against the plaintiff for the amount of any overpayment proved. The jury were thus permitted by the instruction to find a verdict against the plaintiff for damages not claimed in the pleadings. That this instruction was harmful to the plaintiff is apparent from the fact that the verdict against it is just equal to the amount of the overpayment claimed by the defendant, with interest. The plaintiff complains justly, therefore, of this part of the charge.

The appeal presents numerous exceptions to the rulings upon evidence.

The evidence of Joseph Sternschuss, that the defendant's agent, John Semon, told him on one occasion, when he called the witness' attention to the ice, that the plaintiff was robbing him, and that when it presented its bill some day he would not pay it, was a self-serving declaration, made in the absence of the plaintiff or its agents, and was not proper evidence. The plaintiff asked that it be stricken out and the motion should have been granted. The testimony of said Semon, that he had on different occasions called the attention of various persons (naming them), some of whom were not called as witnesses, to the condition of the ice, and that he "called the attention of everybody" he met in New Haven to it, and that he "didn't do anything else apparently," should have been excluded. The quality of the ice could not be proved by such declarations.

The testimony of the same witness as to what was said by him to the plaintiff's agents shortly after he received the letter of March 31st notifying him of the increase of price, should have been rejected. It consisted of declarations of the witness that he was a poor man, that the increase of price would ruin him, that they had a combination and had him in their power, and others of like nature, and tended to prejudice the jury against the plaintiff and obtain sympathy for the defendant, while they tended to prove no fact in issue between the parties. They were admitted as a part of the conversation had at the time. But, so far as appears, the entire conversation had no pertinency to the case, although offered to show that the defendant paid the increased price under protest and without waiving the contract. But the conduct and declarations were quite as consistent with the fact that there was no contract to be rescinded, as that there was one which it was insisting upon being carried out.

The remaining rulings seem to have been correct and not harmful to the plaintiff, and require no consideration here.

There is error and a new trial is ordered.

In this opinion the other judges concurred.