## EDMUND SPICER *vs.* ROBERT S. HINCKS ET AL.

Third Judicial District, Bridgeport, April Term, 1931.
MALTBIE, C. J.; HAINES, HINMAN, AVERY and DICKENSON, Js.

Argued April 22d—decided June 22d, 1931.

*Terrence F. Carmody* and *Walter E. Monagan,* for the appellants (defendants).

*John H. Cassidy,* with whom was *Lawrence L. Lewis,* for the appellee (plaintiff.)

HINMAN, J.   The pleadings and the claims of proof by the respective parties set forth in the findings are voluminous and somewhat complicated, but many of the potential questions presented or suggested thereby become, for practical purposes of the present appeal, immaterial or subsidiary; the ultimate and decisive questions as developed on the trial were whether the defendants wrongfully failed to sell the plaintiff's land bank stocks when and as ordered by him, and whether their action in selling his Puget Sound Power & Light Company stock was wrongful, as the plaintiff claimed, or justified, as the defendants contended.   The verdict unmistakably imports that the jury accepted the plaintiff's claims of facts material to and determina-

tive of these issues; these were amply supported by evidence and were sufficient, under the principles of law as expounded in the charge, to warrant the verdict which was rendered. Unless there was prejudicial error in the instructions given as to the law and its application to the facts, the verdict must stand, and the denial of the motion to set it aside was proper. Therefore, we state only such facts and claims of proof as appear to be essential to an understanding of our discussion of the assignments of error pertaining to the charge.

The plaintiff began to purchase stocks on margin through the defendant brokers, in August, 1922, and such relations continued until the events now in issue, except the plaintiff claims that the account was closed from December, 1923, until April or May, 1924. Commencing in February, 1925, the plaintiff purchased from or through the defendants stocks of various joint stock land banks, the purchase price aggregating nearly $100,000, and, prior to February 1st, 1926, had purchased at various times a total of twenty-two hundred and forty-six shares of the common stock of the Puget Sound Power & Light Company. The plaintiff substantially maintained a one-third margin for his account with the defendants until February, 1926. The defendants' claims of proof are that in February, and again in March, they notified the plaintiff that his account was undermargined; the plaintiff says that the first notification was in March.

The plaintiff offered evidence that in February, 1926, his confidence in the land bank stocks having become impaired, he ordered the defendants to sell at market price all of such stocks held for him. The defendants' evidence was that they advised him, before, in, and after February, to sell these stocks but he refused to authorize sales until May and thereafter, when he or-

dered various lots sold, some at the market, which orders were executed, some at specified prices, part of which were executed, while as to others a market could not be found at the price specified. The plaintiff's evidence was that there was a ready market for this stock in February, and his order could have been executed by the defendants but they failed to do so or make efforts to that end; that he repeatedly remonstrated but without result, and himself found a market for three hundred shares but the defendants refused to recognize the sales and deliver the stock. At different times between May 24th, 1926, and May 10th, 1927, the defendants sold, in small lots, the land bank stocks, except one hundred and fifteen shares which the plaintiff himself sold, in November, 1926, and July, 1927, and seventy-five shares remaining in the hands of the defendants at the time of the bringing of this action.

On or about May 25th, 1926, the plaintiff's account was below a one-third margin by about $16,000, and the defendants notified the plaintiff that unless his margin was increased they would sell sufficient Puget Sound stock to restore the margin; he did not comply, and between June 2d and June 8th they sold seventeen hundred shares. The plaintiff claimed to have sustained a loss, measured by the applicable rules, of $32,-563 by the failure of the defendants to sell the land bank stocks when ordered, and $8725 by reason of the sale of the Puget Sound stock. The jury awarded him damages in accordance with this claim.

The first three reasons of the additional appeal relate to extracts from an extended statement specially characterized as the general rules applicable to stockbrokers in their dealings with their clients, in the absence of any special agreement, and, as such, the portions objected to are manifestly correct. 9 Corpus

Juris, p. 536, § 38; pp. 546, 547, 549; *Ling* v. *Malcom*, 77 Conn. 517, 59 Atl. 698. The fact that this general statement incidentally included elements, inherent in these rules, which had no special applicability or materiality under the controverted issues of the instant case carried no significance prejudicial to the defendants. The statement that a broker is required to give his client the benefit of his knowledge and advice and of information as to known material facts affecting his interest, the effect of an agreement to carry an account for a certain time or until a certain event without further margins, and the requirement of reasonable notice and opportunity to comply with a demand for additional margins, reference to which is objected to, were of this class.

After reviewing the general rules, the trial court fully and fairly explained the special agreements claimed, by the parties respectively, to have been in operation between them, and the effect of each upon their reciprocal rights and duties if it was found to have been in effect. The gist of the fourth reason of appeal, repeated in the sixteenth, is that even if the jury found that the defendants made a special agreement with the plaintiff, as the latter claimed, "to be lenient with him in times of stress," it was too vague and uncertain to be valid and enforceable, and the jury should have been so instructed. The appellee claims that this point is raised in this court for the first time. Be that as it may, we regard the assignment as without merit. "Courts very reluctantly reject an agreement regularly and fairly made as unintelligible or insensible. It will be sustained if the meaning of the parties can be ascertained, either from the express terms . . . or by fair implication." 1 Elliott on Contracts, § 170; Williston on Contracts, §§ 37, 1620; 6 R. C. L. 645. "The promise is not void on the

ground that it is too indefinite. Juries are constantly solving such problems." *Brennan* v. *Employers Liability Assur. Corp.*, 213 Mass. 365, 367, 100 N. E. 633; *Silver* v. *Graves,* 210 Mass. 26, 95 N. E. 948; *Middendorf, Williams & Co., Inc.* v. *Milburn Co.,* 134 Md. 385, 107 Atl. 7. See also *Strakosch* v. *Connecticut Trust & Safe Deposit Co.,* 96 Conn. 471, 481, 114 Atl. 660; *Woodbridge Ice Co.* v. *Semon Ice Cream Corporation,* 81 Conn. 479, 71 Atl. 577. An undertaking by the defendants to be lenient with the plaintiff in times of stress, if made, was reasonably susceptible of interpretation by the jury and of application to the reciprocal relations of the parties. The obvious meaning of such agreement was that, if a situation should arise which rendered it unusually difficult for the plaintiff to maintain his margin requirements, the defendants would not require a strict compliance with his obligation to do so but would afford him reasonable opportunity to protect his interests.

The portion of the charge which is made the subject of the fifth assignment relates to two distinct questions. The first concerned the claimed breach of duty by the defendants in failing to sell the land bank stocks when, in February, the plaintiff claimed he ordered such sale. As to this, fair reference was made to the evidence presented by both parties, and instruction flatly given that if the claim of the defendants be found true—that the plaintiff, instead of giving an unqualified order to sell at the market, only gave orders from time to time specifying prices which could not be obtained—the defendants could not be held liable for failing to sell. The other subject is stated in the charge to be a claim of the defendants relating to damage—to the effect that since the plaintiff learned in a very short time of their failure to sell, and there was no evidence as to the value of the stock at that

particular time, there was no proof of damage. The appellants naturally do not object to the instruction on this point that if the jury found that at the time the plaintiff learned of the failure to sell there was no reason why he could not have negotiated a sale, himself, and he failed to do so, he could not claim any substantial damages. The court was warranted, in fairness, in calling attention to the plaintiff's testimony that, on learning of the failure, he asked to have the stock turned over to his bank in order to have it sold but the defendants refused on the ground that they could sell it as well as anybody and wanted the commissions. We attach no importance to the fact that the finding indicates that this particular refusal referred to related to three hundred shares, as these were the only shares for which the plaintiff claimed to have found a market at that particular time, and the attitude of the defendants reflected by the alleged refusal might fairly be taken as applying to the entire holdings. There was no occasion, in that connection, to repeat reference to the defendants' evidence that the plaintiff refused to authorize sale of this stock, in February, or as to sales made by them in May and June following, or to charge as to the effect, by way of ratification or waiver, of subsequent conduct of the plaintiff, now suggested for the first time so far as we can discern from the record.

The appellants concede the correctness of the charge as to the right of the plaintiff to control stocks held by the defendants for him on margin, and to direct which of them should be sold, so far as concerns their relations while the account was properly margined, but claim that there should have been added the qualification that if after repeated demand the customer fails to make good the margin the broker has a right not only to sell enough stock to make the margin good

but to close out the entire account. Previously, in stating the general rules, the court had charged that a broker who makes a purchase for a client on margin may sell the stock on the client's failure to make the necessary advances on demand. Immediately before and in connection with the portion of the charge now under consideration this principle was repeated, the defendants' claim was stated—that before the sales in question the plaintiff's margin had been reduced below one third and the plaintiff given reasonable notice but failed to make good the margin—and the jury were instructed, "If you find that situation to be so then you would be justified in finding that those sales that took place under these circumstances were lawful sales, for, as I said, a debt of that character is payable on demand when the margin is reduced and the broker has a right to protect himself." The charge on this topic of control, taken in its entirety, as it must be, appears to furnish no valid cause for the criticism made of it. Also, no reason appears why the right of a customer to direct what stocks shall be sold— where a sale of part only of his holdings is required— should not obtain after demand for additional margin, provided no risk of loss to the broker would be caused thereby. 4 R. C. L., Brokers, §§ 17, 27. Moreover, as it appears to be conceded that the plaintiff's margin was not impaired until February, if, before demand for more margin, he ordered his land bank stocks sold, and there was then a ready market for them, manifestly the proceeds of such sale would have superabundantly protected the margin on the other stocks held for the plaintiff, and no occasion would have existed for the sale of the Puget Sound stock.

The record states that counsel for the parties stipulated that the bid and offered prices of the land bank stocks and the market value of the Puget Sound stock,

on specified dates, were as given by the Commercial and Financial Chronicle, and that the values which the plaintiff claimed to have proved might be submitted in writing to the jury. This stipulation superseded oral evidence as to such values and disposes of the assignment pertaining to the testimony of the witness Phillips. The writing spoke for itself as representing the claims of the plaintiff, only, and not admitted facts, and a statement to that effect by the court was unnecessary. As the conflicting claims of both parties as to the value of the seventy-five shares of Kansas City bank stock retained by the defendants were clearly stated in the paper just mentioned, the court's incidental reference to the plaintiff's claim that they were of no value could not have harmed the defendants.

The charge as to the measure of damages from the sale of the Puget Sound stock, if the defendants were found liable on account thereof, followed the rule stated in *Ling* v. *Malcom, supra,* and is questioned only in that it is claimed that the instruction was insufficient as to what would constitute a reasonable time after the sale within which the plaintiff might replace the stock by purchase. It was made clear by repeated statement that this time was that within which the order to purchase would have been given "with reasonable promptness"—a reasonable time considering all the circumstances of the case—the time within which, "in the exercise of reason, diligence and judgment" such order of repurchase should have been given. In this respect the charge was in substantial accord with that in *Ling* v. *Malcom;* here, as there, what constituted, under the circumstances, a reasonable time was properly left to the jury as a question of fact, and the guidance afforded them, to that end, was not inadequate.

The subject-matter of the defendants' tenth request, relating to the right of a broker to sell for the purpose of restoring depleted margins, was covered by the charge as given, which has already been discussed; so also was the effect upon such rights, in the absence of special agreement, of the prevailing customs and usages relating to such transactions, dealt with in the eleventh request.

The fourteenth request was an amplification and specific application to the matter of the sale of the land bank stocks of the general rules, which the court stated as that the broker "is bound to exercise reasonable skill and diligence in the transaction of the business intrusted to him" and "if he exercises the same degree of care and diligence that a prudent man would exercise in a like business" he is not liable for losses resulting. The issue in regard to the land bank stocks was whether the plaintiff, as he claimed, gave unqualified orders to sell, in February, with which the defendants without reason failed to comply, or, as the defendants alleged, he gave no orders at that time and they executed all the subsequent orders that could be carried out in view of the restrictions imposed by the plaintiff as to price. As to this the court charged specifically that liability depended upon which of these claims was found to be true. The finding affords no indication that the defendants offered proof of lack of market for this stock at the time when the plaintiff claimed to have ordered it sold at the then market price. We fail to see that special instruction as to the application of due diligence was required in connection with this feature of the case. The sixteenth request was for a charge to the effect that if the plaintiff gave the defendants an order to sell all his land bank stocks and they wrongfully failed to execute it, the damage recoverable would be the difference be-

tween the market value at the date of the order and the value "at a time when the plaintiff, after learning of the defendants' failure to sell, had had a reasonable opportunity to sell the same himself either directly or by other brokers or agents." The rule applicable was materially affected by the time when control of the shares became so available to the plaintiff that he could, himself, effect a sale of them. The plaintiff, as already noted, claimed and offered evidence that, as early as February, he negotiated sales of this stock but the defendants refused to recognize them and deliver the stock and, further, informed him that they had hypothecated it to secure a loan to themselves. Manifestly, the plaintiff was not to be charged with a duty to sell and a corresponding limitation of damages, until he was accorded such control of the stock as to enable him to make sale of it. Nor was he under obligation, in order to obtain such control, to pay the defendants the full purchase price of the stock. *Allen v. McConihe,* 124 N. Y. 342, 348, 26 N. E. 812; *Quinlan & Co.* v. *Holbrook,* 162 Fed. 272, 89 C. C. A. 252. As adapted to the relevant facts the instruction given was correct: that in determining the damage as to such of the land bank stocks as were not eventually sold by the defendants but were turned over to the plaintiff, who thereafter effected their sale, the value was to be taken as of the date when the defendants relinquished control of the shares to the plaintiff and thereby enabled him to sell them, and, as to such shares as were sold by the defendants, as of the date of such sale. 3 Sutherland on Damages (4th Ed.) p. 2966; 9 Corpus Juris, 550.

The seventeenth request advanced the proposition that even if the plaintiff gave a general order for the sale of these stocks at the market and the defendants wrongfully failed to execute it, if at a later time he

gave orders to sell some of them at a specified price, the measure of damage for failure to sell under the original order would be the difference between the market value as of the date of that order and the value on the subsequent date when the stock was ordered sold at a specified price. However, as we have seen, control of the stock continued in the defendants until relinquished by them by sale or by delivery to the plaintiff, and the instruction requested was not accurate as applied to the facts of the present case.

The remaining assignments allege in general terms error in failing to charge in sundry respects, and have been covered sufficiently by the foregoing discussion of specific reasons of appeal which involve substantially the same contentions. We find no error in the charge which entitles the defendants to a new trial or affects the ruling on the motion to set aside the verdict.

There is no error.

In this opinion the other judges concurred.