HENRY SCHUPACK *vs.* E. WELLES EDDY ET AL.

First Judicial District, Hartford, May Term, 1931.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

398

Argued May 8th—decided June 22d, 1931.

*Donald Gaffney*, with whom was *Leo V. Gaffney*, for the appellant (plaintiff).

*Charles H. Walker*, for the appellees (defendants).

HINMAN, J. After having made a few purchases and sales through the defendant brokers on a cash basis, the plaintiff, on September 9th, 1929, opened a margin account with them. He had no previous experience in such accounts but understood that he was required to maintain a thirty-three and one third per cent margin. He at first thought that the margin was computed upon the market value rather than the loan value of the securities held in the account, but soon learned that the latter was the basis and that he could ascertain the loan value of his collateral only by inquiry from the defendants.

On October 7th the plaintiff asked the defendants to try to procure for him one hundred shares of Marine Midland, a new issue, at $70 per share; the defendants located the desired number of shares and confirmed the stock to the plaintiff when, as and if issued. On October 15th a second memorandum was sent to the plaintiff calling for payment for this stock on October 16th, but this was not made. On November 6th a certificate for the one hundred shares was

tendered to the plaintiff's bank, in accordance with his instructions, but payment of the draft attached was refused. The plaintiff told the defendants' representative that he could not pay the entire purchase price at the time, but he paid $3500 on account thereof. The certificate was retained by the defendants, and the unpaid balance was carried in the plaintiff's account. Midland Marine was not then acceptable to banks as collateral and had no loan value, and the plaintiff was not told by the defendants that he could buy it on margin. On October 11th the plaintiff asked defendants' representative to give him a statement of his margin, and was informed that it amounted to about $3500 in excess of the then requirements of his account, permitting the purchase of about $10,000 worth of stock. In consequence, the plaintiff, on October 11th and 17th, made purchases amounting to about $9600. On Saturday, October 18th, before the opening of the market, the defendants informed the plaintiff that they had made a mistake in stating the condition of his margin account, and that, including the purchases just mentioned, his account was then undermargined to the extent of $3500. The market during this time was in an extremely turbulent state and values were rapidly shrinking. The plaintiff offered to sell the securities last purchased at a price which would cause him no loss, but the price was down slightly and further discussion was postponed until Monday morning, when the plaintiff authorized the sale of these stocks at prices to yield him his cost. Both parties had high hopes that prices would come back in a few days and the defendants told the plaintiff that they would carry his account along, but no agreement was made as to the time for which it would be so carried.

Subsequently, values in the stock market receded,

the defendants demanded further margins on the plaintiff's account, and he gave them a check for $4000 and later deposited additional stocks. The market continued to fall and on November 26th the plaintiff's account was again undermargined $3300 and additional margin was demanded. After a conference between the parties it was agreed that the best way to protect the account was to sell the Midland Marine, since it had no value as collateral in the account and the margin would be increased by the entire amount of the proceeds of sale. It was thereupon sold and the proceeds ($3831) were credited to the plaintiff's account, from which he then withdrew $800 in cash. In December, 1929, the plaintiff deposited additional collateral, bought stock to the amount of about $12,800, and sold stock of the value of $21,600. The account was closed and transferred to another broker January 24th, 1930. We have included in the foregoing statement the corrections of the finding as to material facts to which the plaintiff is entitled.

The plaintiff's action is based upon the agreement made by the defendants, under the circumstances above stated, to carry the plaintiff's account along, notwithstanding its undermargined condition on October 20th. The plaintiff claimed, on the trial, that the defendants agreed to carry the account until the stocks which the plaintiff had bought as a result of the defendants' error as to the state of his margin could be sold without loss. The court was warranted in finding that neither such a period of continuance nor any definite time was agreed to and, consequently, in holding that the defendants' undertaking was to carry the account for a reasonable time. *Hyland* v. *Crofut*, 87 Conn. 49, 54, 86 Atl. 753. The finding also supports the conclusion that such reasonable time had expired before the defendants demanded additional margin,

and that recognition that the agreement was no longer effective was evinced by the plaintiff's payment and deposit of additional securities in response to these demands. The consequence was that thereafter the status reverted to that of an ordinary margin account, with the accompanying rights in the broker to protect the margin by sales if demands for additional collateral were not complied with. This was the situation on November 26th when the account was again undermargined. The finding shows that the plaintiff acquiesced in the selection of the Midland Marine stock as the most advantageous to be sold to supply the deficiency, and he is in no situation to complain that this stock was resorted to in preference to others which, under the general rules applicable to such a situation, the brokers might lawfully have sold. *Spicer* v. *Hincks,* 113 Conn. 366, 155 Atl. 508. Indeed, the plaintiff appears to have been given, in effect, the privilege of designation suggested in the opinion cited (p. 373) as reasonable in cases where a sale of part only of a customer's holdings is required. We also consider justified the further conclusion of the trial court that the withdrawal by the plaintiff of a part of the proceeds of the sale of the Midland Marine stock and his further dealings with the defendants thereafter signify a ratification of the sale. *Buck* v. *Houghtaling,* 110 N. Y. App. Div. 52, 96 N. Y. Supp. 1034.

The decision was correct that, upon the issues presented and the facts found in this action, recovery could not be had for the loss incurred through the sale. We are not called upon to determine, here, what the rights and liabilities of the parties, respectively, would have been had a different course of conduct been pursued by the plaintiff upon discovery and communication to him of the error of October 11th as to the

amount of his margin. The estoppel claimed by the plaintiff to have arisen from that error would be applicable, if at all, to the situation then existing, but not to the rights of the parties under or consequent upon the subsequent agreement, made with knowledge of the material facts.

There is no error.

In this opinion the other judges concurred.