BRIDGEPORT PIPE ENGINEERING COMPANY, INC. *v.* THE DEMATTEO CONSTRUCTION COMPANY

ALCORN, HOUSE, THIM, RYAN and SHAPIRO, Js.

Argued February 4—decided March 3, 1970

*Marc A. Wallman,* for the appellant (defendant).

*Angelo P. Costa,* for the appellee (plaintiff).

ALCORN, J. The plaintiff brought this action in three counts to recover amounts claimed to be due on an express contract or, in the alternative, on an implied contract to furnish labor and materials and on an implied contract for extras. The defendant filed special defenses asserting that the plaintiff had failed to perform properly and counterclaimed for damages for the alleged derelictions. The court ren-

dered judgment for the plaintiff on the complaint and on the counterclaim, and the defendant has appealed.

In its brief the defendant has pursued assignments of error concerning two of the court's findings of subordinate facts and five of the court's conclusions of fact. All other assignments of error concerning the finding are therefore treated as abandoned. *Horton* v. *Vickers,* 142 Conn. 105, 107, 111 A.2d 675. Consideration of the assignments of error which are pursued discloses that the finding is not subject to correction.

The court found as follows: The plaintiff is a corporation engaged in the mechanical contracting business. The defendant corporation is a general construction contractor. During the week of March 17, 1965, the defendant became interested in bidding on a public housing project being undertaken by the West Haven Housing Authority. On March 24, 1965, a duly authorized representative of the plaintiff offered to furnish the labor and materials to do the plumbing, heating and ventilation work on the housing project, as called for by the plans and specifications, for $564,000. This offer was submitted to the defendant by telephone. The plaintiff's offer was based on an estimate of the costs of labor and material plus $44,000 for overhead and profit. The figure of $44,000 approximated a special 8 percent charge for overhead and profit granted to the defendant instead of a charge of 10 percent for profit and 10 percent for overhead which the plaintiff would normally charge. The defendant submitted a bid to the West Haven Housing Authority as the general contractor for the proposed housing project on March 24, 1965, and, on the same day, the defendant learned that it was the low bidder as

the general contractor on the project. Formal award of the contract was not made to the defendant, however, until the end of May, 1965. Between March 24 and the end of May, 1965, the presidents of the two corporations discussed the job, and the defendant's president told the plaintiff's president that the figure of $564,000 for the plaintiff's work was too high. The plaintiff's president refused to change the figure but told the defendant's president that the plaintiff would do everything it possibly could to save him money if the job made money and that, if the costs of materials could be cut, the saving would be passed on to it. By letter to the defendant dated June 30, 1965, the plaintiff confirmed its oral offer of $564,000. At some time prior to that date the defendant told the plaintiff to proceed with the work, and the plaintiff commenced the work in June, 1965. The plaintiff continued with the work for about two years, during which the defendant repeatedly requested a renegotiated price for the work but received none. When the plaintiff completed the work covered by its original offer, it had incurred costs of $486,649.86, which was $33,856.14 less than the estimated costs on which its offer had been based. There was no mutual change, modification or rescission of the contract price of $564,000, however. The plaintiff fully performed and completed its contract, and the defendant has paid the plaintiff $506,582.21 for the work done.

The plaintiff also did extra work not covered by the contract for which it billed the defendant. On one item the plaintiff charged for the cost of labor and materials plus 8 percent for overhead and 6 percent for profit, all of which the court found to be fair and reasonable. In each of nine other bills for extras, the plaintiff charged for the cost of labor

and materials plus 14.414 percent for overhead and 5 percent for profit, and the court has found each of these charges to be reasonable.

From these subordinate facts the court concluded that the plaintiff had offered, for $564,000, to furnish all labor and material necessary to complete the specified work under the plans and specifications and that the offer had been accepted by the defendant, thereby creating a contract; that the plaintiff had performed the work and furnished the material called for by the contract; that the defendant had paid the plaintiff $506,582.21; and that it owed the plaintiff a balance of $57,417.79 under the contract. The court also concluded that the plaintiff had furnished labor and material for a change order and other extra work to the reasonable value of $19,485.80, which included a charge of 14.414 percent for overhead and 5 percent for profit added to the cost for labor and materials. Judgment was accordingly rendered for the plaintiff to recover of the defendant $76,903.59.

It is elementary that to create a contract there must be an unequivocal acceptance of an offer. In the case of a bilateral contract, the acceptance of the offer need not be express but may be shown by any words or acts which indicate the offeree's assent to the proposed bargain. *W. G. Maltby, Inc.* v. *Associated Realty Co.,* 114 Conn. 283, 288, 158 A. 548; *Frederick Raff Co.* v. *Murphy,* 110 Conn. 234, 239, 147 A. 709. The acceptance of the offer must, however, be explicit, full and unconditional. *Woodbridge Ice Co.* v. *Semon Ice Cream Corporation,* 81 Conn. 479, 487, 71 A. 577. And the burden rested on the plaintiff to prove a meeting of the minds to establish its version of the claimed contract. *Lucier* v. *Norfolk,* 99 Conn. 686, 699, 122 A. 711.

The plaintiff's claim is that it made an offer to do the prescribed work for the fixed sum of $564,000 and that the offer was accepted. The court has not found that there was an express acceptance of the offer. In addition to the facts already recited, the court has found, however, that Gene DeMatteo is president of the defendant and that the offer which was submitted to him on the plaintiff's behalf was computed and transmitted by F. Arthur DeLucia. The court also has found that the plaintiff undertook to do the work "pursuant to the terms of DeLucia's understanding with DeMatteo of March 24, 1965." This finding, which is not attacked by the defendant, lacks clarity because of the uncertainty as to the meaning which the court ascribed to the word "understanding". One of its accepted meanings is "a mutual agreement not formally entered into but in some degree binding on each side." Webster, Third New International Dictionary. "We therefore resort to the memorandum of decision to interpret the finding." *Kriedel* v. *Krampitz,* 137 Conn. 532, 535, 79 A.2d 181; *Rogers* v. *Kinnie,* 134 Conn. 58, 61, 54 A.2d 487; *Van Tassel* v. *Spring Perch Co.,* 113 Conn. 636, 647, 155 A. 832. There we find the statement that, "[a]fter the defendant became the successful bidder as the general contractor, it orally accepted said bid or offer of $564,000." While it thus becomes clear that the court became satisfied that, at some point in the dealings, there was an express oral acceptance of the plaintiff's offer, we are still left in uncertainty as to when that acceptance occurred because the defendant discovered that it was the low bidder on March 24, 1965, but was not formally awarded the general contract until the end of May, 1965. Moreover, the case must be decided on the facts found

rather than on those contained in the memorandum of decision. *Stults* v. *Palmer,* 141 Conn. 709, 711, 109 A.2d 592, and cases cited.

Resort must be had therefore to words or acts indicative of the defendant's assent to the plaintiff's offer other than an express acceptance. The court has found that the plaintiff made a firm offer to do specific work for $564,000; that the defendant repeatedly requested, without success, that the plaintiff make a lower offer; that sometime prior to June 30, 1965, the defendant directed the plaintiff to proceed with the work; that the plaintiff confirmed its offer in writing on June 30, 1965; that the plaintiff commenced the work in June, 1965, and continued with it for two years; and that the defendant has paid the plaintiff $506,582.21 for the work done.

The defendant asserts that the court could reach one of three possible conclusions from the subordinate facts, namely, that there was no contract such as the plaintiff claims, that there was a contract to do the work at cost plus 8 percent profit which in no event should exceed $564,000, or that the parties had agreed on an upset price of $564,000 within which the plaintiff had agreed to use its best effort to cut the costs and pass the savings on to the defendant.

A cost plus 8 percent contract, if found to have been made, might also be found to be valid and enforceable. *Continental Copper & Steel Industries, Inc.* v. *Bloom,* 139 Conn. 700, 703–704, 96 A.2d 758. The alternative agreement claimed by the defendant, that the plaintiff would use its best efforts to cut the costs and pass the savings on to the defendant "if the job made money", would present the further question whether it would be unenforceable

for vagueness. See *Roessler* v. *Burwell,* 119 Conn. 289, 292, 176 A. 126; *Spicer* v. *Hincks,* 113 Conn. 366, 370, 155 A. 508; *Burney* v. *Jones,* 140 Ga. 758, 79 S.E. 840; *Noble* v. *Joseph Burnett Co.,* 208 Mass. 75, 94 N.E. 289; *Butler* v. *Kemmerer,* 218 Pa. 242, 67 A. 332. The court concluded that such an agreement was unenforceable. The defendant disputes this. In the view which we take of the case it is unnecessary to decide the point.

Whether any of the claimed agreements existed was a question of fact for the court to determine. *Molloy* v. *Rourke,* 83 Conn. 196, 199, 76 A. 517. If, after the plaintiff's offer was made and after the discussions which followed it, there was ambiguity in the meaning to be attached to the defendant's action in directing the plaintiff to proceed with the work, in allowing it to continue after the offer was confirmed in writing, and in partially paying for the work, such action could not amount to an acceptance of the plaintiff's offer. To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties. *Shulman* v. *Hartford Public Library,* 119 Conn. 428, 433, 177 A. 269.

In the solution of the problem thus presented to the trial court, the credibility to be accorded the testimony of the persons involved in the negotiations loomed large because it was mainly through them that the court could determine the meaning which they severally attached to the plaintiff's offer and to the manifestation of acceptance of the plaintiff's offer by the defendant. After hearing the disputed versions concerning the contract, the trial court has resolved the issue in the plaintiff's favor, and that determination cannot be disturbed.

The portion of the judgment relating to extra work requires no extended discussion. The only attack on the items of extras made by the defendant in its brief is that the plaintiff should be permitted to recover only 8 percent for overhead and profit on these items. There is no claim that the parties had agreed that a charge of 8 percent for overhead and profit should be made for any extra work. The court has found that the charges made for labor, materials, profit and overhead were reasonable and proper.

Finally, the defendant complains of three rulings on evidence. In cross-examining the president of the plaintiff and another of the plaintiff's witnesses, the defendant elicited the fact that the plaintiff had done other subcontracting work for the defendant. The plaintiff's president had also testified that he does not negotiate prices. To show a prior course of dealing between the parties, the defendant asked the plaintiff's president whether, in any of the other jobs, the plaintiff had renegotiated the quoted price downward. The other witness was asked whether there were written contracts on other jobs and whether, on one job, there was a bid price. The court excluded all three questions, and the defendant duly excepted.

The claim made for each question was that the evidence did not disclose an express agreement and that on "an implied agreement" the "conduct of the parties" is relevant. An added ground for the question asked of the plaintiff's president was to attack his credibility.

Upon questions of knowledge, good faith, or intent, other transactions from which any inference concerning the quo animo may be drawn are admissible. *International Brotherhood* v. *Commission on*

*Civil Rights,* 140 Conn. 537, 546, 102 A.2d 366. "On the matter of admissibility, it rests in the discretion of the court to determine whether the evidence offered conduces in any reasonable degree to the establishment of the probability or improbability of the fact in issue." *Pitt* v. *Kent,* 149 Conn. 351, 357, 179 A.2d 626.

In its brief the defendant abandons the claim made in the trial court, apparently as an afterthought, that the question asked of the plaintiff's president was for the purpose of attacking his credibility. The relevancy of questions as to whether, on other jobs, the plaintiff had negotiated its quoted price downward, whether there were written contracts on those jobs, or whether there was a bid price on one of them was not then apparent to the court, and, in the end, the defendant's counsel observed: "I might reserve all this line of questioning to another time that I can properly submit it to the court." The court replied: "If you have a legitimate purpose I am not going to foreclose you out." It then excluded the questions "at this time." There is no indication of any further effort by the defendant to pursue the subject. The exclusion of the questions is not shown to be erroneous and harmful.

There is no error.

In this opinion the other judges concurred.