CHARLES C. CURRY V. BOECKELER LUMBER COMPANY, A CORPORATION, APPELLANT.*—27 S. W. (2d) 473.

St. Louis Court of Appeals.   Opinion filed May 6, 1930.

*Corpus Juris-Cyc. References: Contracts, 13CJ, section 607, p. 592, n. 15; section 608, p. 593, n. 28; section 626, p. 602, n. 51; Sales, 35Cyc, p. 129, n. 77, 79.

*Seneca C. Taylor* and *John H. Haley* for appellant.

338

*Stern & Burnett* for respondent.

SUTTON, C.—This is an action to recover damages for the breach of a contract for the sale of four carloads of lumber. The trial with a jury resulted in a verdict and judgment for plaintiff for $2716.80.

Plaintiff is engaged in the lumber business in the city of Chicago. and defendant is engaged in a like business in the city of St. Louis. On August 27, 1926, plaintiff sent defendant an order for lumber as follows:

"Please ship to
                    " (shipping directions to follow)
"B & Better short leaf pine; straight and free from knots, pitch and wane. Sap stains no defect. Thoroughly dried and smoothly machined to exact dimensions.

    90,000 ft. 1½x2½—8' S4S to 1-5/16x2¼"
    20,250 ft. 1½x3 —9' do    1-5/16x2¾"

Price $58.00 per M f. o. b. Chicago rate. Terms—60-2-10.

"Delivery—To begin as soon as possible and be completed this year."

On August 30, 1926, defendant wrote plaintiff accepting the order, with the modification that the lumber should be free from excessive pitch, instead of free from pitch as stated in the order.

On September 14th, plaintiff wrote defendant directing shipment to the Goshen Manufacturing Company, Goshen, Indiana, stating that, as Goshen required a higher freight rate than Chicago, he advanced the price from $58 to $58.50 per thousand, f. o. b. Goshen, and stating further, that he had arrangements with the Transportation Bank of Chicago for payment for shipments by Goshen Manu-

facturing Company to the bank, and that when the bank received payment it would pay the defendant.

There was much correspondence between the parties with reference to delay in the shipment of the first car of lumber. Plaintiff expressed his disappointment that the shipment of the first car had been delayed, but stated that this was not because he was concerned about the shipment of the first car, as his contract with defendant only required that the entire order be gotten off during the year, and that he feared that this would not be done. Defendant insisted that the delay in the shipment resulted from the occurrence of heavy rains. It appears that plaintiff employed an attorney, who interviewed defendant concerning the shipment of lumber. Thereupon, on December 21st, defendant wrote plaintiff, that one car was ready for shipment, but that inasmuch as plaintiff had engaged a lawyer, defendant would not let this car go forward unless plaintiff wrote defendant that he would not make any claim against defendant, as it would rather keep the lumber in its yard than have any trouble.

In reply to this plaintiff wrote defendant that, after investigation, he had concluded that, although defendant had never before questioned his right to receive all of the lumber under his contract with defendant, nevertheless, if defendant would ship one of the cars right away he would release defendant from any claim under his contract with defendant, and requested that defendant let the car come forward at once. Thereupon, defendant wired plaintiff that it was shipping the car, and it was accordingly shipped and duly received by the Goshen Manufacturing Company. This company at first refused to accept the lumber on the ground that it was wet and below grade. Much correspondence was carried on between the parties concerned relative to the grade of the lumber. This correspondence continued for a period of several months, with the result that the lumber was finally accepted and paid for at a reduced price. It appears that the lumber which plaintiff ordered from defendant was ordered for the purpose of filling an order he had obtained from the Goshen Manufacturing Company. There was much evidence tending to show that the dispute which arose relative to the grade of the lumber was on account of the fact that the order of the Goshen Manufacturing Company to plaintiff specified a higher grade of lumber than was specified in plaintiff's order to defendant, but the dispute between the parties relative to the grade of the lumber was fully adjusted and settled, so this dispute is not involved here. The check for this car of lumber was sent by plaintiff to defendant on February 14, 1927, and it specified on its face that it was in full settlement for the car of lumber shipped by defendant to the Goshen Manufacturing Company.

This suit, which was instituted on August 29, 1927, is to recover damages for failure of defendant to ship or deliver the rest of the lumber specified in plaintiff's order to defendant. So far as the record shows, there was no further correspondence or communication between plaintiff and defendant relative to the shipment of the remaining three carloads of lumber, and no request was made by plaintiff for the shipment thereof after defendant shipped the one carload pursuant to the plaintiff's letter assuring defendant that if one car of lumber was shipped he would release defendant from any claim under his contract with defendant.

Plaintiff testified that he made inquiry of a number of lumber dealers and that their quotations on the proposition submitted by him were considerably higher than the price he had agreed to pay for the lumber ordered from defendant, and that he was unable to procure the lumber at a price as low as that stipulated in his contract with defendant. The evidence tends to show, however, that the prices quoted by these lumber dealers were quoted on lumber of a higher grade than that specified in the contract with defendant. It also appears that the dealers whose quotations plaintiff received were on lumber of larger dimensions than those specified in the contract with defendant, so that it was necessary to cut the lumber down to the dimensions specified. It was thus necessary to use and charge for a greater number of board feet in getting out the number of pieces required to fill the order.

On the contrary, the witnesses for defendant testified that the reasonable market value of the grade of lumber specified in plaintiff's contract with defendant was substantially lower than the price specified in the contract, and that they could have filled the contract, and would have been glad to have done so, at such lower price, and would have made a good profit on the deal.

Plaintiff makes no claim for special damages by reason of not having received the lumber contracted for with defendant to fill his order from the Goshen Manufacturing Company, but sues merely for general damages, which is conceded to be the difference between the contract price of the lumber contracted for with defendant and the market price at the time and place of delivery.

The defendant urges here that the court erred in refusing its instruction in the nature of a demurrer to the evidence, and in instructing the jury, at the instance of plaintiff, to disregard the evidence with respect to plaintiff's releasing defendant from delivering all the lumber provided for in the contract. Defendant contends that there was a rescission or setting aside of the original contract between the parties by mutual agreement and a substitution therefor of a modified contract for the delivery of one carload of lumber in lieu of four carloads as originally agreed upon.

Plaintiff contends, (1) that there was no attempt to rescind the contract, and that defendant did not offer to rescind, but only asked to be released from any claim under the contract, and did not agree to release plaintiff from his obligations under the contract, and that plaintiff did not ask to be released from any obligations under the contract, but merely agreed to release defendant; and, (2) that there was no consideration for the modification of the contract.

It is obvious from the tenor of plaintiff's letter, written in response to defendant's letter of December 21st, that he proposed that if defendant would ship one of the cars he would release defendant from any further shipments. Acceptance of this proposal by defendant, of course, amounted to an implied agreement to release plaintiff from any obligation to accept any further shipments. It is evident from the correspondence that it was the mutual understanding of the parties that if one car was shipped both parties were released from further obligations under the contract. That this was the understanding was also manifested by the subsequent conduct of the parties.

On the question as to whether or not in a given case there is a sufficient consideration to support the modification of a contract the authorities are in great confusion. It is universally held that so long as the contract remains wholly executory it may be set aside by mutual agreement, and no other consideration is necessary. It is settled law that ordinarily a contract which has been fully executed by one of the contracting parties may not be modified without some new consideration to support the modification, as, for example, where one has agreed to perform a specified service or work for a specified price, and has fully performed that service or work, an agreement afterwards made between the parties for the payment for such service or work of a greater sum than the contract price is a *nudum pactum*. It is also settled that a contract, while it remains wholly executory, may be modified by mutual agreement of the parties, where the modification affects the obligations of both parties to the contract, as where one party agrees to pay more, for a more burdensome task undertaken by the other, than that provided for in the contract without a new consideration. But where the obligations of the one party to the contract are modified and the obligations of the other party are not, as where one party agrees to pay more for the same service or work the other party is already obligated to perform under the contract, some of the cases hold that there is no consideration for the modification and that there must be some new consideration to support it, while other cases hold that the original consideration attaches to and supports the modification and that no new consideration is necessary. Some of the cases hold that where one party to an executory contract refuses to perform the same and

the other promises him some additional consideration in order to induce him to perform there is no consideration for the promise to pay the additional consideration, since the promise is made to procure the performance of that which the other party is already legally obligated to perform, and that though the other party may perform the service or work called for in the contract in reliance upon such promise to pay the additional consideration, the promise is, nevertheless, void for want of consideration and may not be recovered upon. Other cases hold that, since a party to a contract has the right to elect whether he will perform the contract or abandon it and pay damages, the giving up of this right of election furnishes a consideration for the new promise. There are cases holding that where the circumstances of the parties to the contract were such as to introduce an element of coercion on the part of one of the parties in exacting a promise from the other for an additional consideration for the performance of the contract, such promise is void for want of consideration. It is also held in some cases that where a party refusing to perform his contract does so by reason of some unforeseen and substantial difficulty which was not known or anticipated by the parties when the contract was entered into, and the opposite party promises him extra pay or benefit if he will perform his contract, the promise is supported by a valid consideration. And it is held that, where one delivers to another property which is his own, and which he could recover in a civil action, such delivery furnishes no consideration to support a promise by such owner of the property.

It would seem that where parties to an executory contract, resting wholly in unexecuted mutual promises, and the circumstances are not such as to introduce any element of coercion, mutually agree, upon refusal of one of the parties to perform the contract, that if he will perform the contract he shall be paid an additional compensation or benefit therefor, the party promising to pay the additional compensation or benefit ought not be heard to say that the promise is not supported by a valuable consideration, after the other party has performed the contract in reliance upon such promise. The law fixes the responsibility of one who abandons his executory contract and declines to perform it. The responsibility is to pay the damages, if any, which the other party has suffered. The law does not compel him to specifically perform his contract. He may discharge his responsibility by the payment of damages. The other party has no right to compel him to specifically perform; his right is to be compensated in damages, and nothing more. If he had a right to the specific performance of the contract the courts would enforce that right by compelling specific performance, but he could not compel specific performance, either at law or in equity. The right of a party to abandon his contract and decline performance,

and pay damages instead, is fundamental and essential to civil liberty. The contract is entered into by the parties with this right in view. Without this right few persons would dare enter into a contract. Surely the right is a valuable one. Ought one party to the contract, who promises to compensate the other for yielding this right and rendering performance in lieu of damages, be heard to say, after performance has been rendered, that his promise is void for want of consideration? This precise question is not before us here and it will not be necessary to decide it.

In the present case there was something more than a mere unilateral modification of the contract. The contract was for the sale and delivery of four carloads of lumber. While the contract was yet executory and neither of the parties had performed any part of it, they mutually agreed that one carload should be delivered instead of four carloads. This involved not only the releasing of the defendant from the obligation to deliver the remaining three cars, but also involved the releasing of plaintiff from purchasing said remaining three cars. It must be remembered that under the contract plaintiff was bound to purchase and pay for said three cars as much as defendant was bound to sell and deliver them to him. By mutual agreement these mutual obligations were waived or released by the parties. There was no element of coercion in the agreement. Plaintiff's own testimony concedes that he could have purchased the lumber called for in his contract with defendant at a somewhat higher price, which could have been readily compensated for in damages. The defendant's evidence shows that he could have purchased the lumber at a price substantially lower than the contract price, so that he was actually benefited by being released from purchasing all the lumber contracted for. The evidence shows that the plaintiff voluntarily and willingly entered into the agreement for the modification of the contract. The agreement has been fully executed by both parties. There were some differences between them as to the grade of lumber shipped, but these differences were composed and satisfactorily adjusted.

We are constrained to hold that the learned trial court erred in refusing the instruction in the nature of a demurrer to the evidence, and in giving the instruction complained of.

The Commissioner recommends that the judgment of the Circuit Court be reversed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed. *Haid, P. J.,* and *Becker* and *Nipper, JJ.,* concur.