J. W. Tipton Cotton Co., Respondent, v. W. L. Clayton et al., Co-partners, doing business under the name of Anderson Clayton & Company, Appellants.— — S. W. (2d) —.

Springfield Court of Appeals.   September 8, 1936.

Rehearing denied January 2, 1937.

248

*C. A. Cunningham* and *C. G. Shepard* for appellants.

*Ward & Reeves* for respondent.

BAILEY, J.—This is a suit to recover damages for breach of an option contract on the sale of 129 bales of cotton. The plaintiff is a corporation of Missouri and defendants, W. L. Clayton et al., are co-partners doing business under the name of Anderson Clayton Company, with their principal office in Memphis Tennessee.

The issues involved may be more clearly understood by a reference to the pleadings. Plaintiff's amended petition, upon which the case was tried, alleges in substance (quoting from respondent's statement of the case) the following: "that on November 3rd, 1932, plaintiff agreed to sell to defendants 129 bales of cotton weighing 69,259 pounds, the price thereof to be fixed 40 points off the March cotton market quotation in New York City, the date of the fixation of such price to be at the option of the plaintiff, the seller.

"That on the following day the defendants mailed a confirmation of said sale to plaintiff, which confirmation was signed by both parties and provided in small printed matter that plaintiff would keep on deposit with defendants not less than $10.00 per bale margin, but that the defendants did not at any time require plaintiff to keep said sum of $10.00 per bale as margin, and that it was understood and agreed between plaintiff and defendants that said provision of the written confirmation was waived by defendants. The petition further charges that said cotton was not delivered to the defendants until January 9th, 1933, and up until that time no part of the consideration had been paid and on said date when said cotton was delivered to the defendants the defendants voluntarily paid to plaintiff on the purchase price of said cotton the sum of $3,365.98, and that at said time the margin left with the defendants was approximately $5.00 per bale, and that defendants promised and agreed that said sum would be sufficient. That, thereafter, at the request of plaintiff, the defendants were authorized to add to said advance on said cotton the sum of $184.20 representing amounts due from plaintiff to defendants on return checks, so that the total advance on said cotton was $3,550.18. It is further charged in said petition that thereafter, on February 21, 1933, by a new contract and agreement entered into between plaintiff and defendants (which contract was in writing) the agreement touching the sale of said cotton was modified and changed from 40

points off of the March market quotation in New York City, subject to plaintiff's call, to 74 points off of July, 1933, market quotation, New York City, subject to plaintiff's call, and that in order to get said contract changed and modified plaintiff was required to pay the additional sum of 34 points as a consideration for changing said contract, and that, after said new contract was entered into between plaintiff and defendants, plaintiff was required only to keep said cotton margin to a figure 17 points (85¢ per bale) above the amount that plaintiff had been paid on said cotton, and that so long as the market price of said cotton was as much as 17 points above said amount the same would be carried by the defendants, and the plaintiff then had until July, 1933, to call for a fixation of the purchase price of said cotton. It is further charged in said petition that in conformity with said new agreement the plaintiff did, on June 12th, 1933, call for a sale and fixation of the value of said cotton upon the basis of the close of the New York cotton quotation of that date, and on said date the New York close was 9.37¢ per pound, and that deducting the 74 points in conformity with the contract from that amount left a balance due plaintiff of 8.63¢ per pound, which gave the plaintiff the total sum of $5,977.05 as the sale price of said cotton, and that deducting therefrom the sum of $3,550.18 left a balance due plaintiff of $2,426.87, for which amount plaintiff asks judgment.

"The defendants filed a motion to strike out certain parts of this amended petition, but this motion was never called to the attention of the circuit court and, consequently, it was never acted upon."

To this amended petition defendants filed an amended answer in which it is admitted that on the 3rd day of November, 1932, they entered into a contract with plaintiff to purchase 129 bales of cotton f. o. b. cars, forty off March New York market, but deny each and every other allegation. The answer further pleaded that the contract of purchase was reduced to writing, which contract contained the following provision:

"It is the intention of the parties to this contract that the price shall be fixed on or before shipment and delivery, but if the seller has not directed the fixing of the price by that time and the buyer agrees to an extension of time for fixing the price, seller agrees to keep the buyer protected at all times by having on deposit with the buyer not less than ($10.00) Ten Dollars per bale margin and to pay all expenses incidental to the price fixed of this contract, including telephone and telegraph charges. If price is not fixed before the first notice day the cotton then becomes buyer's call and the buyer has the privilege of fixing at any time. Advice of such fixing to be promptly reported to seller. Seller agrees that failure on his part to keep contract margin according to agreement auto-

matically gives the buyer the privilege of fixing the price on this contract."

It was further pleaded that on the 21st of February, 1933, at plaintiff's request, the call on said cotton was transferred from forty off March to seventy-four off July; that at that time plaintiff was indebted to the National Cotton Seed Products Company and sold and assigned to said company all its right and title in the alleged contract with defendants to secure plaintiff's obligations to said company; that plaintiff failed to keep the said cotton margined, as agreed in said contract; that defendants thereafter called upon said National Cotton Seed Products Corporation for funds to keep said margin within the terms of said contract which demand was refused; that plaintiff was notified of said refusal and himself called upon to furnish funds to take care of said margin, which plaintiff likewise failed and refused to do; that thereafter on February 25th, 1933, defendants notified plaintiff that they had placed a "stop order" fixing the price for the 129 bales of cotton on July at $6.05; that they afterwards, through their representative, offered to reinstate said contract if plaintiff would pay the margin agreed upon, which plaintiff refused to pay but demanded that defendants carry the risk.

It is further pleaded that defendants' carried out all the terms of the contract on their part and did not fix the price on said cotton until plaintiff failed to furnish the margin agreed upon; that defendants acted in all things according to the rules of the Memphis Cotton Exchange as provided in the written contract.

It is further pleaded that in addition to the cotton in question plaintiff sold defendants 119 bales of cotton; that when the 129 bales of cotton were sold defendant placed to the credit of the 119 bales the sum of $70.62 and notified plaintiff of that fact; that plaintiff retained said credit with full knowledge of the facts and ratified said transaction and is therefore estopped from claiming any damages for the sale of the 129 bales of cotton.

The reply was a general denial of the new matter set up in the answer. Upon the issues thus drawn a trial was had to a jury which resulted in a verdict and judgment for plaintiff in the sum of twenty-five hundred fifty and 22/100 dollars, from which judgment defendants have appealed.

The first error assigned is that the trial court failed to sustain a motion to strike part of plaintiff's petition. The record does not show that the trial court took any action upon this motion or that the matter was thereafter called to the attention of the trial court. Under such circumstances that assignment cannot be reviewed here.

The next point made is that the trial court erred in refusing to sustain defendants' demurrer to the evidence offered at the close

of plaintiff's case and again at the close of the whole case. The evidence most favorable to plaintiff will be set forth in brief.

J. W. Tipton was president of the J. W. Tipton Cotton Company, plaintiff, and at the time of the transaction involved herein was in charge of its management. In the fall of 1932, plaintiff was engaged in buying and selling cotton at gins. On November 3rd, 1932, plaintiff, acting through J. W. Tipton, sold 129 bales of cotton to defendants on the basis of "40 points off March N. Y.," the sale being made by telephone. The sale was immediately confirmed by letter and the terms thereof accepted by plaintiff. This letter was, in part, as follows:

"It is the intention of the parties to this contract that the price shall be fixed on or before shipment and/or delivery, but if the seller has not directed the fixing of the price by that time and the buyer agrees to an extension of the time for fixing the price, seller agrees to keep the buyer protected at all times by having on deposit with the buyer not less than ($10.00) ten dollars per bale margin and to pay all expenses incidental to the price fixing of this contract, including telephone and telegraph charges. If price is not fixed before first notice day, the cotton then becomes buyers call and the buyer has the privilege of fixing at any time. Advice of such fixing to be promptly reported to seller.

"Seller agrees that failure on his part to keep contract margined according to agreement automatically gives the buyer the privilege of fixing the price on this contract."

While the transaction is referred to as a sale and contemplates the actual delivery of the cotton, it was a sale "on call" and the seller retained the privilege of having the price fixed at a later date, so as to take advantage of any rise in the market, and at the time of delivery would receive the then market price for his cotton less any margin required by the terms of the sale. The cotton was delivered to defendants on or about the 9th day of January, 1933, and plaintiff was paid $3365.98. Defendants retained as margin $5 per bale instead of the $10 per bale stipulated in the letter of confirmation. In addition to the amount received in cash at the time of delivery, defendants also retained $184.20, by agreement, being the amount due on several returned checks. This, according to plaintiff's evidence, made a total of $3550.18 received by plalintiff on the 129 bales of cotton and he had with defendants a margin of approximately $5 per bale in addition thereto. On February 4, 1933, defendants notified plaintiff that they had placed a stop loss order at seventeen points above the point to which the cotton had been margined. According to this same letter the March contract was then margined to $5.53. This meant that when the price of March Cotton on the New York market reached a point below seventeen points above the margin plaintiff's contract would

be closed out. Thereafter, on February 15, 1933, defendants advised plaintiff that he should either fix the value on this cotton or if he preferred they would change the contract to a forward month, that is to a later market. On February 18, 1933, plaintiff requested defendants to change the contract to July. In compliance with this request defendants changed the contract from ''40 off March to 74 off July.'' The added points consisted of twenty-eight points (difference in months) plus six points transfer charges. On February 22, 1933, defendants claim to have notified plaintiff by letter that the stop loss order with March at five and seventy-hundredths had been cancelled and that they had substituted one with July at six and five hundredths; that he was then margined to July, New York at five and ninety-five hundredths. Plaintiff denied having received this letter. No demand was then made for additional margin. On February 26 defendants wired plaintiff that ''On open stop loss fixed price of hundred twenty-nine bales July at 6.05.'' This telegram meant that plaintiff's contract was closed out at six and five-hundredths points. In response to this telegram plaintiff wrote defendants, the same day, as follows:

''Anderson Clayton Cotton Co.,

''Memphis, Tenn.

''Gentlemen:

''We received your telegram as to the fixation on 129 B C and am very badly disappointed at same as there was some margin still up, and must say that I expect it to be re-instated, as we were charged with 6 points for transfer, also that you had not spotted it on board prior to the change and had been to no expense in same, while I know that is a rule with the exchange, still that doesn't make it fair, as I realize like all others that those rules are made for you all only.

''You will also note that the very low for the day was where you all got us out.

''Please let me hear from you, also that the contract has been re-instated, without any expense to us whatever.

''Very truly yours,

''J. W. TIPTON COTTON CO.,

''I sold you all in the neighborhood of 4000 B. C. this past fall and feel that am due some consideration for that.''

On March 3, defendants advised plaintiff that they had transferred a credit of $70.62 received on the 129 bale contract to his margin on some other cotton not involved in this suit. There was no proof that plaintiff consented to this settlement. On the same date plaintiff notified defendants by letter that it refused to accept the fixation on the 129 bales at July Cotton six and five hundredths and expected the 129 bales to be reinstated at six and five hundredths. Following this, on March 10, 1933, plaintiff wrote de-

fendant that "when the market is where we want to call out we shall at that time wire you in regard to the 248 bales of cotton, 129 July New York and 119 May New York, this cotton being the same sold to your Mr. Osborne etc.," On June 12, 1933, plaintiff sent defendants a wire and letter as follows:

"To Anderson, Clayton Co.,

"Street and No., Memphis, Tenn.

"Place: Call one hundred twenty-nine bales cotton July New York on todays close.

"J. W. TIPTON COTTON CO.,

"Close 9.37."

"Anderson Clayton and Co.

"Memphis, Tenn.

"Gentlemen:

"This letter is to confirm our telegram sent to you this day calling out 129 bales of July New York cotton, which we had on call with you. It is to be called on the close of today.

"Very truly yours,

"J. W. TIPTON COTTON CO."

Mr. Tipton testified for plaintiff that "The close of the market on June 12th, 1933, was nine-thirty-seven, New York. From February 21st to June 12th, six naught five was the least market. I don't know of the market going lower. I made demand of defendants for the remainder of the purchase price of this cotton. On June 12th, there was a balance due in the sum of $2426.87. This has not been paid, they refuse to pay it. This is based on the seventy-four points off of July market, June 12th."

Defendants offered evidence tending to prove the allegations of their answer relative to the failure of plaintiff to abide by the stipulations of the original contract and the closing out thereof as heretofore indicated. We will not incumber the record by going into that evidence. Plaintiff, of course, is entitled to the benefit of any evidence offered by defendants tending to support his case questioned on a demurrer to the evidence. In this connection we find that defendants' witness Crenshaw, manager of their Memphis office, testified to the effect that he had written the latter of February 4 advising plaintiff that defendant had placed a stop order at seventeen points above the point to which the cotton was margined. This was before the contract was transferred to July, which was done on February 21, 1933. He further testified that he had made no personal demand on plaintiff for additional margin except through the National Cotton Seed Company, but he had written them letters and sent telegrams demanding additional margin but that no demand of any kind was made between February 21 and 25, 1933, when the price of the cotton was fixed and plaintiff's contract sold out. He further testified that at the time the price was fixed plaintiff had

a margin of ten and one-tenth point. Plaintiff claims that at that time it had a margin of about nineteen points. Reference will be made to such other evidence as may be necessary, hereinafter.

In considering the demurrer there appears to be but two decisive questions which may be stated as follows: Was there a change in the original contract for the sale of the cotton by which change plaintiff was required to have a margin of seventeen points per bale in lieu of the $10 per bale, or 200 points? If so, did plaintiff have a margin of 17 points above the market on February 25, 1933, when the price of the cotton was fixed by defendant? As to the first question, it is clear that the provision in the contract that plaintiff should keep a margin of $10 per bale was never enforced, or intended to be enforced. When the cotton was sold to defendant plaintiff received the then price of the cotton less $5 per bale margin to protect defendant on the future market. If there had been any intention to require the $10 per bale margin defendant had the power and the right under the contract to have retained that amount when it had all plaintiff's money in its possession. This it did not do. Mr. Cunningham, defendant's agent who made the purchase of the cotton in question, testified that he told Mr. Tipton, plaintiff's general manager, that the margin required would be 100 points or five dollars per bale and that when the market got down to where he had only fifty or sixty points, there would be no margin and a fixation instruction and stop order would be placed. This was in accordance with what actually was done at the time of the sale, as heretofore indicated. Under this arrangement defendant had the undoubted right to fix the price of the cotton any time plaintiff failed to keep the contract margined to not less than $5 per bale. It was, however, a provision that defendant could at any time waive. It was, in other words, an option that defendant could exercise or not. This defendant did not do. On the contrary, by its letter of February 4, 1933, heretofore referred to, it informed plaintiff that it had placed a stop loss order at seventeen points above the point to which the cotton was margined as of that date. Thereafter, on February 21, 1933, the contract was transferred from forty off March to seventy-four off July, New York market. When the transfer was made there was no mention of any intended change in the point at which a stop loss order would be enforced. There can be no doubt that defendant had the right to change the stop order at any time from the basis of seventeen points above the margin, and require plaintiff to keep a margin of at least $5 per bale, as agreed. But such change required a reasonable notice after the letter of February 4, above referred to, by the terms of which defendant in effect agreed to carry the cotton on the basis therein set forth until further notice. In 9 C. J., p. 546, the law is thus stated: "A broker undertaking to buy on margin

has no right to sell without the client's authority where he has sufficient margin in his hands; and if he agrees to carry an account for a certain time or until a certain event without further margins, he is liable in damages for closing the transaction before that time." Following this statement, at page 547, it is said: "To justify a broker in closing out the transaction on depletion of the margins, it is incumbent on him first to make demand of the client for further margins, and the demand must be such as will give the client a reasonable notice or time to comply therewith; and if a broker waives a default in complying with such a demand, he cannot close the transaction until a new demand is made." The law as above stated appears to be the generally accepted rule in marginal transactions. [4 R. C. L., p. 266, sec. 17; Content v. Banner, 184 N. Y. 121, 76 N. E. 913, 6 Ann. Cas. 106; Miller v. Lyons, 113 Va. 275, 74 S. E. 194; Denton v. Jackson, 106 Ill. 433; Ling v. Malcom, 77 Conn. 517, 59 A. 698.] Since it stands admitted in this case that no demand for additional margin was made on plaintiff after the letter of February 4, 1933, until the price was fixed on the sale of the cotton, it is our opinion that defendant had no right to order sale of the cotton without notice of change in the amount of the margin required and if, as a matter of fact, plaintiff had a margin of seventeen points at the time the price was fixed, a case was made for the jury.

On the question as to whether or not plaintiff did actually have a margin of seventeen points at the time the price was fixed, the record shows that Mr. Tipton testified, without objection, that at the time defendant closed the contract he had on deposit with them "a sum equal to 17 points or more." While this was a conclusion of the witness, it was some evidence from which a jury might find plaintiff did have a margin of seventeen points at the time in question. [Doyle v. St. Louis Merchants' Bridge Terminal Ry. Co., 31 S. W. (2d) 1010; Ridenhour v. Oklahoma Contracting Co., 45 S. W. (2d) 108; Montague v. Washington Fidelity Nat. Ins. Co., 72 S. W. (2d) 804.]

Plaintiff also argues that the actual figures introduced in evidence tended to prove plaintiff's margin was seventeen points or more. It is said that the market on June 12, 1933, was $9.37 and after deducting seventy-four points required under the July transfer, plaintiff had a net of $8.63; that the undisputed evidence showed plaintiff had received an advancement of $3550.18 on the cotton and that Tipton testified there was a balance due him in the sum of $2426.87, making a total of $3977.05; that by dividing said total amount by the net of $9.63, the total number of pounds was 69,259; that the advance to plaintiff was therefore $5.12 per bale; that plaintiff was closed out at $6.05 and after deducting the seventy-four points required by the July transfer there was left $5.31 per

bale; that since plaintiff had drawn but $5.12 per bale, as aforesaid, leaving a margin or nineteen points. Defendant disputes this reasoning on the ground that plaintiff was in fact advanced about $500 more than that amount stated, which, if true would reduce the margin below that claimed. It appears to us, after carefully considering the rather merger record on this question, that the $500 retained by defendant as margin at the time of the original contract of sale, was figured in the amount plaintiff claims was due and that to add that to the amount plaintiff is supposed to have received would result in figuring that amount twice in the above calculations. We therefore are compelled to hold, under the rule that plaintiff is entitled to the benefit of all the evidence most favorable to it together with any reasonable inferences therefrom, on demurrer, that there was some evidence from which a jury might determine plaintiff's margin was seventeen points at the time the price was fixed.

It is urged that since the contract of sale was in writing it could not be modified by parole. As we understand the evidence the modification of the contract was contained in a letter and therefore was reduced to writing. Since the contract was executory in so far as the price fixation and the dealing in futures were involved, we think the parties by mutual agreement could modify the contract in respect to the margin required and the transfer of the contract from March to July. [13 C. J., 589; Curry v. Lumber Company, 27 S. W. (2d) 473, 224 Mo. App. 336; Carman v. Harrah, 182 Mo. App. 365, 170 S. W. 388.] It is therefore our opinion that plaintiff made a case for the jury and that the demurrer to the evidence was properly overruled.

Complaint is made of plaintiff's Instruction No. 1. This instruction is of considerable length and will not therefore be set forth in full. One charge made against the instruction is that it left to the jury the matter of interpreting the written contract which was for the court. As we read the instruction it first requires the jury to find the written contract for the sale of the 129 bales of cotton was entered into. This was admitted on both sides. It next submitted to the jury the question as to whether or not the cotton was delivered and plaintiff at the time paid by defendant the sum of $3365.98. There was no controversy as to that point. It further required the jury to find as a condition to plaintiff's right to recover, that $184.20 was charged by defendant against plaintiff; that the contract was changed from forty points off March to seventy-four points of July, 1933, New York market; that plaintiff and defendant modified the contract so the plaintiff was required to keep as a margin but seventeen points; that on the 12th day of June, 1933, plaintiff elected to call for a sale and fixation of price; that plaintiff at all times kept with defendant a margin of in excess of seventeen points. We consider that the instruction fairly submitted the issuable facts.

The instruction also contains the following language: "Then you will find the issues herein for the plaintiff and against the defendants for the market price of said cotton based upon the close of the New York market quotation for the month of July, 1933, and in arriving at your verdict you will take the market quotation at the New York close on said June 12, *1934*, and .deduct therefrom 74 points, or .74 cents per pound being the agreed sale price of said cotton and from said net amount you will calculate the value of said cotton and deduct therefrom the amount which had theretofore been paid by defendants to plaintiff, and the result will be the amount of your verdict, and to which amount you may calculate interest at the rate of 6 per cent per annum since the date said amount was demanded from defendants, if you find it was demanded from defendants." (Italics ours.)

It is urged that the instruction was misleading because the date June 12, 1934, was used instead of June 12, 1933. This is apparently a typographical error, since the correct date June 12, 1933, appears immediately preceding the date 1934, in the instruction and there was no evidence as to the market in New York for June, 1934, but all the evidence as to the market quotation was for June 12, 1933. We think the jury could not have been misled by such mistake.

Error is assigned as to the admission of incompetent evidence, but such evidence is not pointed out under the assignment of errors or points and authorities. We must therefore disregard this assignment. [Holta-Warren Lumber Co. v. Miller, 64 Mo. App. 620; Evans v. Williams, 4 S. W. (2d) 867, 222 Mo. App. 705; Taylor v. Missouri Natural Gas Co., 67 S. W. (2d) 107.]

Defendant complains of the trial court's refusal to give its offered instructions 2 and 6. Instruction No. 2 was upon the theory that plaintiff was required to keep a margin of $10 per bale and that if it failed to do so the verdict should be for defendant. This would be according to the strict terms of the original contract which according to defendant's own evidence were never enforced or intended to be enforced. Moreover, some eight instructions were given for defendant, some of which, fairly submitted the question as to whether or not plaintiff had violated the contract as to the keeping of margins. As to Instruction No. 6, it raised the question of estoppel based upon the assumption that plaintiff had received and accepted and also directed the application of a balance due it from the sale of the cotton after defendant had fixed the price. We find no evidence that plaintiff directed the application of this fund or agreed to accept same. We therefore hold there was no error in the refusal of these instructions.

We find no serious error in the trial of the case and the judgment should be affirmed. It is so ordered. *Allen, P. J.,* and *Smith, J.,* concur.