**REXITE CASTING CO.**

v.

**MIDWEST MOWER CORP.**

No. 28840.

St. Louis Court of Appeals.

Missouri.

April 20, 1954.

A. P. Kaufmann, Fred Armstrong, R. A. Hetlage, St. Louis, for appellant.

Martin A. Rosenberg, Rodney Weiss, St. Louis, for respondent.

HOUSER, Commissioner.

Action on a written contract. Plaintiff corporation, Rexite Casting Company, and defendant Midwest Mower Corporation entered into a contract based upon a letter dated November 19, 1947 and an attached purchase order for 100,000 cast aluminum side frames for use in the manufacture of lawn mowers, at a unit price of 52¢ each. By the terms of the contract plaintiff was obligated to procure and furnish the necessary permanent molds for casting these parts, but defendant was not to be liable for any cost of molds until they were accepted by defendant as satisfactory as evidenced by sample parts produced. The actual cost of the molds as evidenced by invoice (not to exceed a total of $3,600) was to be amortized over 100,000 parts at a sum not to exceed 3.6¢ each. The molds were to be and remain the sole property of the Midwest Mower Corporation, which had the right to cancel the purchase order without recourse upon 30 days' written notice, in which event the mower corporation would pay "the balance due on molds after all payments have been credited to the cost of the molds." After the molds were procured and satisfactory sample castings made plaintiff, in June, 1948, commenced production of the side frames. After approximately 17,000 to 20,000 castings had been shipped, and on

August 16, 1948 William F. Reck, Jr., vice-president of plaintiff company, notified Sigmund Rudman and Harry Bobroff, officers of defendant corporation, that it was necessary to increase the price of the castings due to increased metal costs which plaintiff's officers could not foresee when the contract was negotiated in November, 1947; that unless plaintiff increased the price it would be losing money every time it made a casting; and that defendant could "take it or leave it," i. e. either pay the increase or plaintiff would not make delivery. According to plaintiff's evidence defendant's officers opposed the increased price but, after discussing the "pros and cons" of the upward price, finally "acquiesced" and told Reck to write a letter to that effect. Plaintiff's letter "confirmed" the parties' conversation "regarding adjusted price on future delivery of permanent mold castings" at the "adjusted price" of 78¾¢, the new price to become effective after delivery of the castings already finished and awaiting delivery on plaintiff's floor, which were to be invoiced to defendant at the old price.

Defendant's officers claimed that after beginning the delivery of castings at the contract price plaintiff changed the invoice price to 78¾¢ without any prior agreement, and that when defendant's representatives complained and pointed to the contract price Reck told them "in no uncertain terms" that he would have to raise the price, and that 78¾¢ would be the price "or else we would get no castings." Defendant had a substantial number of orders for lawn mowers for which delivery had been contracted at a fixed, established price. An officer of defendant testified that plaintiff raised the price of the castings (approximately 50%) at a time when defendant was in heavy production in an amount which, if paid, would absorb enough of the contemplated profit to make the operation unprofitable. The frame castings were an essential part of the lawn mower, without which the whole manufacturing operation would have to shut down. It was too late to contract for castings from other sources for delivery during that production year. It takes months to make the necessary molds. If defendant did not agree to pay the increased price the plant could no longer operate—they would not be able to deliver and therefore would lose all of their customers. According to defendant's officers defendant was "over a barrel" on the matter; plaintiff had put defendant in an untenable position and defendant had no choice but to agree; had "no other recourse, to stay in business." Defendant's officers felt that plaintiff had "gone back on the original deal." Defendant did not reply in writing to plaintiff's letter of August 16 but did order, receive and pay at the increased price for several lots of castings which were delivered by plaintiff during the fall of 1948 and until it had enough castings to carry it through that season. The payments made at the advanced price included the stipulated payment on account of the molds. Defendant quit taking castings from plaintiff in December 1948. Immediately after the price was raised defendant made efforts to procure molds elsewhere. On January 5, 1949, after three or four months of negotiating, defendant entered into a contract with Missouri Die Casting Company for the manufacture of side frames, using the die casting method, and for the production of the necessary dies at a guaranteed maximum price of $3,600. The castings were to be supplied at the cost of 57¢ per unit. Defendant refused to take more castings from plaintiff as soon as Missouri Die Casting Company had assured defendant that it could produce the castings in sufficient quantity during the coming season. Thereupon defendant made demand for reimbursement for overcharges, claiming the difference between the contract and the "adjusted price" on all deliveries made under the increased price. After defendant refused to take more castings plaintiff demanded payment for castings furnished but not paid for and offered to turn over the molds to defendant provided defendant paid plaintiff the balance of $2,937.21 claimed to be due on the molds.

Rexite Casting Company then brought suit against Midwest Mower Corporation in two counts. Count I was for the balance due for castings made and delivered but not paid for, in the sum of $783.22, figured

at the rate of 78¾¢ each, based upon the written contract as amended and modified. Count II was for the balance due on the molds in the sum of $2,937.21, based upon the original written contract, without any allegation as to modification. The mower corporation, answering Count I, admitted the existence and terms of the original contract but denied that there was a modification thereof. In answer to Count II the mower corporation alleged that the casting company had breached the contract; that it agreed to pay the increase demanded by the casting company under duress; that the increase was without consideration and void, and that because of the casting company's breach of contract the latter was not entitled to recover the balance claimed on the molds. The mower corporation also filed a counterclaim in which it sought to recover as overcharges the difference between the contract price and the increased price paid on parts cast and delivered after the price hike went into effect, in the sum of $2,301.75, and for $662.79 paid on the molds at the times the overcharges on the parts were paid, less $578.25 which the mower corporation conceded was due the casting company on unpaid invoices figured at the original contract rate of 52¢ each.

The trial court submitted the issues arising on Count I and on the counterclaim to a jury, which returned a verdict for the casting company and against the mower corporation on Count I of the petition for the full amount, figured at the rate of 78¾¢ each for castings delivered but not paid for, and for the casting company on the mower corporation's counterclaim. The court directed a verdict for defendant mower corporation on Count II of the petition. The trial court filed a memorandum opinion holding that plaintiff's refusal to deliver castings at the contract price constituted a breach of contract, relieving defendant of all obligation to make further payments under the contract; that there was no consideration for any agreement to pay a higher price, and that "It would be strange law if plaintiff could commit a flagrant breach of contract and thus recover the cost of these molds which it declined to use under the terms of this contract." No appeal was taken from the judgment on Count I of the petition, or from the judgment entered on the counterclaim. Plaintiff casting company has appealed to this court from the judgment directing a verdict for the mower corporation on Count II of the petition.

On this appeal plaintiff, passing over the question of breach of the original contract, bases its right to recover for the molds upon the existence of an amended or modified contract, for which it claims there was adequate consideration. Plaintiff makes the further contention that the provisions of the contract relating to molds were distinct from those relating to castings, and that a change in the price of the castings (relieving defendant of further obligation with reference to the castings) would not relieve defendant from liability to pay for the molds. Plaintiff also raises the point that it was error to take the case from the jury; that defendant pleaded the doctrine of "flagrant breach" of contract, or economic duress, and that although plaintiff regards that fact as immaterial, it was an issue of fact which should have been submitted to the jury since Count I was submitted to the jury on the doctrine of duress.

In predicating its case for reversal of the judgment with respect to Count II on the existence of a modified contract plaintiff goes beyond the allegations of Count II of the petition, in which only the original contract, and not the modified contract, is pleaded. While Count I pleads modification and amendment of the original contract, no such facts are set forth in Count II. Passing over for the time being the failure of plaintiff to plead the basis of its claim, let us consider the merits of the point. Plaintiff concedes by inference that there must be a consideration to support the modification of a contract, and relies on the doctrine that where a party refuses to perform his contract by reason of some unforeseen and substantial difficulty not known or anticipated by the parties when the contract was entered into, and the opposite party promises him extra pay if he will perform his contract, the promise is supported by a valid consideration. The basis of the doc-

trine is that plaintiff had a right to elect whether it would perform the original contract, or abandon it and pay damages, and that in giving up this right and in going ahead with the original obligation, the necessary consideration is supplied. Plaintiff cites Curry v. Boeckeler Lumber Co., 224 Mo.App. 336, 27 S.W.2d 473, in support of this doctrine. The reference to the doctrine in the Curry case, supra, however, was by way of dictum, the court expressly stating that it was not deciding the case on that basis. While the doctrine contended for by plaintiff has been adopted in Massachusetts and a few other jurisdictions, see Annotation—Consideration for Additional Pay, 12 A.L.R.2d 80, it has not been accepted in this jurisdiction. Here it is well settled that while an agreement made in substitution of a prior executory contract annuls the former contract and is itself a sufficient consideration for a release from its obligations, the substituted agreement must contain a change of the obligation of each party in order to constitute a consideration. Vrooman v. Burdett, 336 Mo. 1181, 83 S.W.2d 95; Mt. Vernon Car Mfg. Co. v. Hirsch Rolling Mill Co., 285 Mo. 669, 227 S.W. 67. In the latter case the court said, 285 Mo. loc. cit. 693, 227 S.W. loc. cit. 74, "If the obligation of one party only is affected by the new arrangement, and the other party receives nothing additional and is relieved of no duty, then there is a want of consideration." That is exactly the situation in the instant case. The only change in the contract was the change in the price of the castings. This merely increased the obligation of defendant. Defendant received nothing additional and was relieved of no duty. The obligation of plaintiff was not increased. " * * * when a party merely does what he has already obligated himself to do, he cannot demand an additional compensation therefor, and although by taking advantage of the necessities of his adversary he obtains a promise for more, the law will regard it as nudum pactum, and will not lend its process to aid in the wrong." Lingenfelder v. Wainwright Brewery Co. 103 Mo. 578, 15 S.W. 844, loc. cit. 848.

Nor was there consideration as a result of the money adjustment in the sum of $230.50. Defendant had accumulated a certain amount of scrap metal, resulting from improper castings. When the price was raised, Mr. Rudman of the defendant corporation prevailed upon plaintiff to give defendant a credit memorandum in that amount. Provision for the allowance of such a credit was comprehended in the terms of the original contract that "The right is reserved to * * * reject goods if not of quality ordered * * * Supplier will accept for return and full credit all items not as ordered." Furthermore, the credit could not be regarded as a consideration for the alleged modification for the reason that it occurred nearly three months after the so-called modification. The trial court properly ruled that the alleged modification was without consideration.

Thus plaintiff is relegated to whatever rights it may have had under the original contract for two reasons: the original contract forms the basis of Count II as a matter of pleading, and the modified contract, being nudum pactum, is not available to plaintiff as the basis for action. All of the evidence, including that of plaintiff's officers, shows that plaintiff refused to furnish any more castings unless defendant consented to the raising of the price from 52¢ to 78¾¢ each. Plaintiff's refusal to further perform the partly executed contract unless defendant consented to a modification constituted a total breach of the original contract. 12 Am.Jur., Contracts, § 387, p. 963.

Plaintiff, however, in effect argues that even if defendant was thereby discharged from further liability under the original contract as to the castings, the contract otherwise remained the same and in all other respects bound defendant, for the reason that the contract provisions with reference to the molds were distinct from the provisions relating to the castings. Whether a contract is entire or severable is a question of intention, to be gathered from the language used and the subject-matter of the agreement. Tests

which have been applied are whether the subject-matter of the contract is divisible, whether the consideration is entire or apportioned, whether the obligation is due at the same time to the same person, whether the contract is to take the whole or none, and whether the parties assented to all the promises as a single whole so that there would be no bargain whatever if any promise or set of promises were stricken out. Swinney v. Continental Bldg. Co., 340 Mo. 611, 102 S.W.2d 111, loc. cit. 120, and authorities cited. The subject-matter of the contract was the production of castings by the use of the molds provided for in the contract. It was not two contracts, one for the production of castings, and the other for the furnishing of molds, but was one indivisible contract. The molds were indispensable and necessarily had to be furnished in order to make castings, but the molds were not made for their own sake. They were useless except for the production of castings. The two subjects, castings and molds, were wholly interdependent. The parties obviously did not assent separately to the provisions as to the castings and molds. There was a single assent to the whole transaction involving both. The obligation of the plaintiff was not only to produce 100,000 castings, but it was to produce 100,000 castings with the molds furnished under this contract. The obligation of plaintiff with reference to the molds was not only to procure and furnish the molds, but also the manufacturing use of the molds 100,000 times. It is obvious that the parties would not have bargained with each other if the promises concerning either the molds or the castings had been stricken out of the contract. Neither plaintiff nor defendant would have consented to a separate contract for the molds without a provision for the production of castings by the use of the molds. Plaintiff's business was that of casting, not mold-making. Plaintiff did not in fact make the molds in question but contracted for their fabrication by a third party. The fact that the contract concerned two separate articles (castings and molds) does not necessarily make the contract divisible, where the two are so interrelated that one is actually the counterpart of the other. Concededly the castings and molds were not to be paid for in a lump sum, but the liability to pay for the molds was conditioned upon the production of the castings, as is attested by the fact that payment for the molds was amortized over 100,000 parts at the rate of "not more than 3.6¢ *per casting produced.*" Defendant's payment for the molds thus was bound up with and geared to the production of the castings. The only contingency upon which the payment for the molds was to be commuted was the act of cancellation by defendant under the contract provision. Significantly there was no provision authorizing plaintiff to cancel the contract. The supplying of the molds and the production of the castings were "completely and intimately inter-related," as in the case of In re Kellett Aircraft Corp., 3 Cir., 191 F.2d 231, wherein a somewhat similar contract providing for the production of refrigeration cabinets by the use of certain jigs, dies, and fixtures to be fabricated by the producer, was held to be entire and not severable. The court said, 191 F.2d at page 236:

"A realistic view of the contract necessitates the conclusion * * * that the April contract was entire in every sense of the word. * * * the production of the tools and the production of the cabinets are completely and intimately inter-related. The fact that there seems to be a separate consideration for the tools should not be allowed to obscure the fact that the parties must necessarily have looked upon the contract as entire."

We conclude that it was the intention of the parties that the contract in the case at bar be regarded as entire and not severable. In such a situation the whole contract stands or falls together. 17 C.J.S., Contracts, § 331, p. 788. Consequently plaintiff, having breached the indivisible contract in respect to the castings in a material manner, is precluded from recovering thereon for the molds. 17 C.J.S., Contracts, §§ 458, 475, pp. 943, 981.

 The point that the court failed to submit the issue of "flagrant breach" of contract, or economic duress, to the jury is without merit. The issue of duress, introduced into the lawsuit by defendant, was a defensive feature. The failure of the court to submit this defense to the jury is not a point for our consideration until it is first established that plaintiff made a submissible case on Count II, for if plaintiff made no case plaintiff may not be heard to complain that the court failed to submit a defense to its case. That plaintiff made no case on Count II of its petition has been demonstrated.

 Plaintiff makes the further point that the contract expressly provided that in the event defendant cancelled the contract it would pay the balance due on the molds and that the molds "are to be and remain the sole property of the Midwest Mower Corporation"; that defendant is bound to pay for them in any event, if not at 3.6¢ per casting upon delivery, then in a lump sum, even though plaintiff breached the contract. Plaintiff overlooks the fact that plaintiff's breach of the contract effectively precluded plaintiff from relying upon its terms. Had plaintiff fully performed, and had defendant either cancelled the contract under the cancellation provision or breached the contract while it was still in full force and effect, the point would merit our attention. Plaintiff's breach, however, preceded defendant's cancellation. A party to a contract cannot claim its benefits where he is the first to violate it. Motor Port v. Freeman, Mo.App., 62 S.W.2d 479. Defendant's failure to pay for the molds under the contract, having occurred after and because of plaintiff's prior breach of the same contract, could not be made the basis of liability on the part of defendant to plaintiff. Marquand Develop. Corp. v. Maisak-Handler Shoe Co., Mo.Sup., 260 S.W.2d 242.

The court properly directed a verdict for defendant on Count II. Plaintiff could not recover upon the original contract for the reason that under its own evidence plaintiff breached that contract. It could not recover upon the alleged modified contract for lack of consideration. The Commissioner therefore recommends that the judgment of the circuit court be affirmed.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, affirmed.

ANDERSON, P. J., and RUDDY and BENNICK, JJ., concur.